The Ordihaby.
This cause comes before the court upon appeal from a decree of the Orphans Court of the county of Warren, appointing Samuel Perry and Margaret his wife guardians of the person and estate of Mary Scliamp, an *542 orphan under the age of fourteen years. There were four applicants before the court for the office of guardian of the infant. (1.) Tunis H. Tunison, who was the original applicant, and who it is represented applied at the instance and with the approbation of the mother of the infant. (2.) David M. Albert, and Sylvina his wife, who is the mother of the infant, she having intermarried with the said David since the death of her former husband. (3.) Abraham Gulick, the maternal grandfather of the infant. (4.) Samuel Perry and Margaret his wife, the said Margaret being the paternal aunt of the infant. The mother and her husband and the maternal grandfather of the infant have appealed from the decree. It is not disputed that the persons who were appointed guardians were in all respects fit and proper persons to fulfil the duties of that office. The only question submitted' for determination is, whether the court were justified, in the exercise of their discretion, in preferring the claims of a more distant relative to those of the mother and the maternal grandfather.
The mother, and after the mother the next of kin of the infant, are entitled to be appointed guardian of a minor under the age of fourteen years; and such claim cannot be disregarded unless for some satisfactory reason apparent to the court. Nix. Dig. 580, § 23; 2 Kent's Com. (7th ed.) 233, note 6; Eldridge and Wife v. Lippincott, Coxe 397; Read v. Drake, 2 Green’s Ch. R. 78.
I think the reasons disclosed by the evidence in this case rendered the appointment of the mother and stepfather of the infant as her guardians improper, and fully warranted the court in passing by their claims. It is not denied that the mother, under the statute, has the clear legal right to the guardianship of her child, which cannot be disregarded without justifiable cause. But that right must be held in subordination to, and exercised in consistency with the rights, the moral training, and the highest welfare of the child. The law gives no countenance to the idea, that the moral and mental culture, the proper education and discipline of the *543 child aro to bo held in subordination to the legal rights of the parent. The courts, both of law and equity, constantly interfere by writ of habeas corpus for the protection of infants against the immoral and vicious influences exercised over them in their own home, and will dispose of their custody, even against the legal claim of the father, in such mode as shall be most conducive to the welfare of the child.
This it is true is usually done at the instance of the mother, but the principle is clearly recognised; and the court, in selecting a guardian to represent the parent, and to exercise pro tanto his rights, will be equally cautious and equally vigilant in protecting the highest interests of the child.
"Where the mother is unfitted, by loss of intellect or by want of female virtue, for the proper care and training of the child — where the house of a husband, over whom she has no control, is the resort of improper company, or otherwise an unfit place for the training of a girl of tender years— where the children arc trained in habits of vice or profligacy, or where, from any cause, no proper moral or social restraint is exerted, but counter influences are continually operating to an extent destructive of private morals and virtue, these and causes like those, it will not be denied would afford a perfectly satisfactory reason why a court should not place a girl of tender years within their influence.
It was not necessary that the Orphans Court should state upon the record the preciso grounds of their decree, bio benefit to parent or child could result from it. It sufficiently appears by the evidence. And without defining, or attempting to define the extent of departure from the line of virtuous conduct or of moral rectitude that may be established by the evidence, it is enough to say that it justified the conclusion of the court below.
As between relations having no legal claim to the services of the infant, a greater latitude of discretion is allowed to the court, and a reason which might not be sufficient to bar the legal rights of the mother, might suffice to decide the question as between the claims of other relations. As *544 the guardianship of the orphan involves the charge both of the person and estate, it is important that the party to whom the charge is intrusted should not only-be a capable and fit person to take charge of the estate, but in the case of , an infant of tender years should be qualified, either personally or through his family, to superintend the habits and training of the ward. It appears, from the evidence, that the maternal grandfather is not so situated. It would appear indeed, from the circumstances under which his claim to the appointment was presented, that it was designed rather to defeat the appointment of the respondents, than from any well grounded wish or expectation that the appointment would or ought to be made.
The circumstance that the mother relinquished, or agreed to relinquish the charge of the child to its paternal grandparents, is entitled to no consideration. If fully proved, the step might have been influenced by the pressure of poverty or by other considerations which have ceased to exist. A parent cannot by contract thus alienate the right to the control or guardianship of his children. The People v. Mercein, 3 Hill 400.
Nor did it constitute any good ground for giving preference to a paternal relative in the appointment of a guardian, that all the estate of the infant came from the grandfather. Underhill v. Dennis, 9 Paige 208.
But it was a circumstance entitled to very great consideration, and which could not have escaped the attention of the court below, that the infant has never since her early infancy been under the care, control, or custody of the mother, or been in any way interfered with or provided for by her, but that she has been under the care and guardianship of her paternal grandfather and his family, to whose charge she was committed by the mother for a period of nearly eight years; that since the death of the grandparents she has continued under the care of his family, including the paternal aunt, to whose guardianship she has been intrusted by the court, and that no objection whatever is suggested to the *545 mode of treatment which she has experienced, or to the care and control which has been exercised over her. The interest of the infant could not be promoted by a change in her position, social relations, habits of life, and mode of training at her present age. It is obviously for her best interests that she should remain where she is, and where she has been and is properly cared for and trained, until she is at liberty to choose a guardian for herself.
It appears upon the face of the decree that the court, before making it, had a conversation with the infant. It is insisted that the court erred in consulting the wishes or inclinations of an infant under fourteen years of age in the appointment of her guardian. It is fully conceded that, in making the appointment of guardian of an infant under fourteen years of age, the court are to be controlled by other considerations than the wishes of the infant. But no such motive appears, or is fairly to be inferred from the record as is attributed to the court. The infant, at the time the decree was made, and for some time previously, had been under the care of the relative to whose guardianship she was finally intrusted. The court might have desired to know from the lips of the infant herself whether she was properly treated, or whether any reason existed why she should not be continued in the situation in which she then was. She might have been called as a witness for that purpose; and if the court saw fit to examine her without oath, it certainly could not prejudice the decree or justify this court in inferring that it was made upon improper grounds or under the influence of unlawful evidence.
The decree of the Orphans Court is in all things affirmed. Costs upon the appeal are allowed to neither party, as against the other.