JOSEPH RICHARDS, appellant,

*v.*

GEORGE FREDERICK COLLINS and MARY J. COLLINS, respondents.

1. On a petition for a *habeas corpus* to obtain the possession of an infant, the granting of the writ and the return thereto setting forth, under oath, the causes and circumstances of the infant's detention, the statements of the return will be taken as true if there be no answer denying its allegations.

2. The chancellor, by virtue of his general jurisdiction over infants, may, under proper circumstances, order an infant, not only to be relieved from illegal restraint, but to be surrendered to its parents, even when the preliminary proceedings show that the statutory remedy is sought, if the subsequent pleadings and proofs touch the right to the permanent custody of the infants.

3. The strict legal right of parents to the custody of their children will not prevail, if it imperils the personal safety, morals, health or happiness of the children, and the court will scrutinize the character, condition, habits and other surroundings of the claimants, as well as consider the preferences of the children, if competent, in determining what will best subserve their welfare.

On appeal from an order advised by Vice-Chancellor Van Fleet, directing the appellant to surrender a child twelve years and eight months old to its parents.

*Messrs. Riker & Riker,* for the appellant.

*Mr. J. Frank Fort* and *Mr. James M. Fisk,* for the respondents.

The opinion of the court was delivered by

KNAPP, J.

Upon the respondents' petition to the chancellor the writ of *habeas corpus* went to the appellant commanding him to have before the court Clara Belle Collins, a child of the petitioners, who, as the petition alleged, was in the appellant's custody and restrained of her liberty. The appellant made return to the writ under oath, as required by the statute (*Rev. p. 470 § 15*), setting forth the causes and circumstances under which the said Clara was abiding in his family.

No answer was filed to the return.

The first matter to be considered is the effect to be given to such return in deciding the controversy. The case proceeded to a determination before the vice-chancellor upon the petition and return.

The rule generally applicable to pleadings between parties in court is, that facts material in the cause and formally averred in a pleading, unless denied by the party against whom they are pleaded, are, for the purposes of decision, accepted as true by the adjudicating tribunal. There seems to be no good reason for thinking the principle inapplicable in a proceeding of this character. In *Bennet* v. *Bennet, 2 Beas. 114,* upon a return made by the respondent to a writ of *habeas corpus,* the petitioner, upon the coming in of the return, applied for and had leave to file her answer traversing the return, and an order was made that either party might take testimony upon the answer being filed. So in *Baird* v. *Baird, 3 C. E. Gr. 194,* the same course of practice was pursued.

These cases show the practice to be, to obtain leave to traverse the facts stated in the return, if the petitioner questions their

truth.   The court will grant this to the petitioner when the truth of the return is not conceded.

When the truth of the return is denied by answer, then an order to take testimony upon the issue of fact thus made is allowed.   If the petitioner sees fit to bring on the hearing on the averments in the petition and the return (which he may do), he must be considered as conceding the truth of all material facts stated in the sworn return.   Otherwise their truth could not be established, for the rule to take testimony is granted only when an issue of fact is formed.   At common law the return to a writ of *habeas corpus* could not be controverted.   *Bac. Abr. Hab. Corp.* § *13.*   The remedy for false return was an action on the case by the party, or by indictment.   Subsequently, instead of indictment, the courts punished for false return as a contempt.

The decree in this case ordered the custody of the infant to be surrendered to its parents.   It is said that the decree goes too far in any event when it does more than relieve from illegal restraint. The chancellor in this state exercises a concurrent jurisdiction with law judges on *habeas corpus*.   No doubt it is true that in the ordinary use of the writ the court may content itself, where the subject of the alleged imprisonment is capable of self-protection, with a judgment or order freeing the person from illegal custody and restoring him to liberty.   But it is quite clear that in this use of the writ judges have not refused to exert a larger power, and have quite frequently, in the case of children, taken the subject of illegal restraint from the custody of one and handed it over to another.

That this is, and from earlier times has been, the rule of practice on *habeas corpus,* is made apparent in the opinion delivered in the court of errors in *Baird* v. *Baird, 4 C. E. Gr. 481,* and also by the opinion of the chancellor in the same case in *3 C. E. Gr. supra.*

The court may stop with the mere removal of restraint, or, in its discretion, may go farther and determine for the time being the custody of the subject of the writ.

But the court of chancery exercises a far more extended control in respect to the right of custody of children in virtue of an

inherent jurisdiction over that subject. In the exercise of this higher authority, that court may permanently fix the *status* of infants even in disregard of the legal rights of parents, where the welfare of the infants requires it. Nor is it material to the exercise of this power in what way the subject is brought into court. In *Baird* v. *Baird,* the petition was to the chancellor as one of the judicial officers authorized by statute to issue the writ, and not to him in the exercise of the more general jurisdiction of the court of chancery. But the return to the writ and the answer to the return filed by the petitioner presented a case for the cognizance of the court in its more general jurisdiction. The chancellor doubted whether, in the proceeding, the general powers of the court of equity were invoked, yet, on appeal, the court of errors declared that, when an issue is made by the pleadings and proof on the question of the right to the *permanent custody of infants,* the case addresses itself to the general authority of equity as the public guardian of infants.

It becomes necessary, in this case, to determine in which of these aspects it stands before the court.

In my opinion, the pleadings present a controversy such as addresses itself to the general equitable powers of the court. The parties are claiming the right of permanent custody of the child, and they stand in a position to litigate that question. Facts sufficient for its decision are put upon the record. The case throughout has proceeded as one in the equity court. It was referred out of the court of chancery to one of the vice-chancellors, and the decree entered was upon his determination and advice. On this theory alone could the award of permanent custody have been decreed.

The case is within the rule of practice declared in *Baird* v. *Baird, 6 C. E. Gr. 384.*

Whatever decree there shall here be directed will, to the extent of its own terms, fix the future *status* of the child with some stability and permanence.

The decree below must then be tested by the principles which control in equity in disposing of the custody of infants.

Doubtless it is the strict legal right of parents and those stand-

ing *in loco parentis* to have the custody of their infant children as against strangers. This right will control the judgment of the court, unless circumstances of weight and importance connected with the welfare of the child exist to overbear such strict legal right.

The court will not regard the parental right as controlling, when to do so would imperil the personal safety, morals, health or happiness of the child. In determining this delicate and often difficult judgment, the court looks at the character, condition, habits and other surroundings of claimants.

In resolving the general question of what will best subserve the interest and happiness of the child, its own wish and choice may be consulted and given weight, if it be of an age and capacity to form a rational judgment. There is no fixed age which capacitates such choice. It depends upon the extent of its mental development. *Commonwealth* v. *Hammond, 10 Pick. 274; Matter of Dowles, 8 Johns. 328; People* v. *Chegary, 18 Wend. 637.*

The wishes of children of sufficient capacity to form them are given especial consideration, where the parents have for a length of time voluntarily allowed their children to live in the family of others, and thus form home associations and ties of affection for those having their care and nurture, and when it would mar the happiness of the children to sever such ties.

The relation of parent and child is regarded as not fully characterized by the relative duties of service and support. Nature's provision of mutual affection commonly exists as the incentive to parental and filial duty and the bond of family union. It is the instinct of childhood to attach itself and cling to those who perform toward it the parental office; and they become endeared to it by ministering to its dependence. A parent, by transplanting his offspring into another family and surrendering all care of it for so long a time that its interest and affections all attach to the adopted home, may thereby seriously impair his right to have back its custody by judicial decree. In a controversy over its possession, its welfare will be the paramount consideration in controlling the discretion of the court. The strict right of the

parent will be passed by, if a judgment in observance of such right would substitute a worse for a better custodian.

Guided by the foregoing considerations, and accepting the facts set forth in the return to the writ as true, I am unable to agree with the court below in its disposal of this case.

The decree below, as it seems to me, regards nothing but the strict legal right of the parent, discarding as immaterial the circumstances which brought the subject of the writ into the appellant's family, and caused it to be kept and cared for from its birth until the issuing of this writ. Consideration should have been given to the fact that all it knew of home or family ties grew up with the parental care bestowed upon it by the appellant and his wife. The difference in the homes of the litigants, with the child's better prospect in life with its uncle and aunt, who have both the ability and the will to advance it, should have had weight in the decision. Clara was of an age and capacity to form a sensible choice, and her wish deserved consideration.

It is unnecessary and of no profit to do more than advert to the facts set forth in the return. It is not true that Clara ever came to the house of appellant by force or the procurement of himself or his wife. When Clara's mother was distressed by family trouble she sought the house of her sister, Mrs. Richards, and there gave birth to her child. She asked this sister and the sister's husband to give it a home with them, to save it from becoming an object of public charity. They agreed to take it and rear it as their own child. They nursed and cared for it through helpless infancy. They watched over and provided for it as it grew in years. Whatever it has known of parental love and care is from them. It would be passing strange if it had not become bound to them and the home they gave it, with a child's affection. They have faithfully executed their trust, and are still willing and abundantly able to provide for it and advance it in life. During all this time, the respondents, either through inability to give it a home or through indifference, have withdrawn themselves from it and allowed it to become rooted in its foster home. The true interest of Clara, under present circum-

stances, requires, in my judgment, that she remain in the appellant's family.

In my judgment, the decree below should be reversed, and a decree entered committing the custody of Clara to the appellant. Provision should be made in the decree for reasonable access of the petitioners to her, and the right should be reserved to the petitioners, in case of a material change of circumstances, to come into court for further direction and assistance.

*This order reversed.*

*For affirmance*—Magie, Cole, Smith—3.

*For reversal*—Depue, Dixon, Garrison, Knapp, Reed, Scudder, Van Syckel, Brown, Clement, Whitaker—10.