Buckley *v.* Perrine.

Glen Ridge was formed; that in the territory included within Glen Ridge forty-eight of the hydrants were set, and after the organization of the borough of Glen Ridge it passed an ordinance regulating the use of these hydrants, which ordinance deprives the township of Bloomfield not only of the exclusive use of these hydrants, but of any use of them.

The prayers are that the defendants may be enjoined from controlling or regulating these hydrants or from interfering with the complainant in its use of said hydrants.

*Mr. George S. Hilton,* for the complainant.

*Mr. Joseph G. Gallagher* and *Mr. Joseph Coult,* for the defendants.

---

JULIAN GERARD BUCKLEY and MARY KEMBLE SLACK

*v.*

LEWIS PERRINE and ADDIE SLACK PERRINE.

1. By the supplement of May 9th, 1889 (*P. L. of 1889 p. 426*), to the *Habeas Corpus* act, the vice-chancellors have power to use the writ of *habeas corpus* according to its appropriate office, as the chancellor and justices of the supreme court may use it, to test the legality of personal restraint.

2. In conferring this power the legislature did not clothe the vice-chancellors with the jurisdiction of the chancellor, as *parens patriæ*, to award the permanent custody of infants, which is frequently exercised by use of the writ of *habeas corpus* as a means of bringing respondents before the court.

3. When the vice-chancellors act in cases within the latter jurisdiction, they do so as in other equity cases, as advisers of the chancellor.

4. Jurisdiction of the parties to a controversy, as well as of the subject-matter thereof, is necessary to the validity of a judgment of a court therein.

On the 9th day of October, 1895, Julian Gerard Buckley, in behalf of his sister, Mary Kemble Slack, presented a petition entitled "In Chancery of New Jersey," to John T. Bird, Esq., one of the vice-chancellors of the state. The petition is addressed "To His Honor John T. Bird, Vice-Chancellor of the State of New Jersey," and on the day of its presentation was filed in the chancery clerk's office. In the petition it is alleged that Mary Kemble Slack is the widow of William Hall Slack, deceased, who died in this state on the 2d of October, 1895; that there were born to William Hall Slack and Mary Kemble Slack two children, Mary and Addie, aged respectively eight and ten years; that in March, 1894, Slack deserted his wife and children and went to reside at Trenton, in this state, with Lewis Perrine and his wife, and thereafter did not provide for the maintenance and support of his wife and children; that at his request, on the 16th of October, 1894, Mrs. Slack, who then had the custody of the children, permitted them to visit their father, at the house of Lewis Perrine, at Trenton; that the children have been detained hitherto at Trenton, first by their father and then by Perrine and his wife; that the mother has endeavored to regain possession of them; that Lewis Perrine refuses to give them up to her, alleging that, by his will, the father of the children made the wife of Lewis Perrine their guardian and awarded to her their custody. The petition prays that a writ of *habeas corpus* may issue to bring the children before John T. Bird, vice-chancellor, that they may be released from their illegal restraint by Lewis Perrine and delivered to the petitioner and their mother.

Upon the presentation of this petition, the vice-chancellor to

whom it was addressed, endorsed upon a writ of *habeas corpus* these letters and words : "Allowed by the statute. John T. Bird, V. C." The writ commands the production of the children before "John T. Bird, Vice-Chancellor of the State of New Jersey," and is attested in the name of the same official. It is sealed with the seal of the court of chancery, signed by the clerk of that court, endorsed as though in a cause pending in that court, and now remains on file in the chancery clerk's office.

Upon the return of the writ, an order was made by "John T. Bird, V. C.," endorsed as though in a cause pending in the court of chancery, like the writ of *habeas corpus*, which order recited that Lewis Perrine claimed to have been unable to prepare a return to the writ of *habeas corpus*, and also that Addie Slack Perrine was the real custodian of the children ; that the court was of opinion that time for making the return should be extended, "and," using the language of the order,

"that in order to properly raise the issue to be tried in the cause touching and concerning the permanent custody of the aforesaid minor children, that Addie Slack Perrine should be made a respondent with him in the said cause,"

and it was thereupon ordered (the solicitors of the respective parties to the proceeding and of Addie Slack Perrine consenting) that the return day be extended and that Addie Slack Perrine be made a party respondent.

Later, counsel filed with the clerk of the court of chancery formal written appearances for Lewis Perrine and his wife, as though in a cause pending in that court between Julian Gerard Buckley as petitioner and Lewis Perrine as respondent. And later, they filed a paper, entitled " In Chancery of New Jersey," addressed to "John T. Bird, one of the Vice-Chancellors of the State of New Jersey," and styled "The answer of Lewis Perrine to the petition of Julian Gerard Buckley and for his return to the writ of *habeas corpus* thereon issued." This paper denies that Lewis Perrine has or had the custody of the infants, and avers that his wife, Addie Slack Perrine, has such custody under the appointment of her as the testamentary guardian and custodian of the infants by their father's will. It also avers that

William Hall Slack was, at the time of his death, domiciled in the District of Columbia, where his will had been theretofore offered for probate, and it insists that, by such offer for probate, the supreme court of the District of Columbia has acquired jurisdiction of all questions as to the validity of the will and as to. the custody and guardianship of the infants. It denies the right of John T. Bird, vice-chancellor, to determine the question of the legal right to the custody of the children. It also objects that Julian G. Buckley is without power and right to prosecute the petition in behalf of his sister, who is *sui juris*.

By a document of similar character, entitled and addressed in the same way, Addie Slack Perrine also responded that she has the bodies of the children before the court as commanded; that she is the sister of the father of the children, and detains the infants in her control, and has declined to deliver them to the petitioner or any other person; that she detains them in virtue of the laws in force in the District of Columbia; that the children, their father and their mother were all domiciled in the District of Columbia, and the children have no property in New Jersey and were only temporarily sojourning in this state with their father at the time of his death; that by the laws of the District of Columbia the father was empowered to effectually bestow the custody of his infant children by deed or will; that on the 12th of July, 1895, William Hall Slack made his will, disposing of the custody of his infant daughters to the respondent Addie Slack Perrine; that on the death of the father, on. the 2d of October, 1895, the respondent took the custody of the children; that on the 5th of October, 1895, the will of Mr. Slack was offered for probate in the District of Columbia, and the supreme court of that district has taken the jurisdiction in the premises and is now passing upon the validity of the will; that such question of validity will determine the right of custody of the children, and the supreme court of the District of Columbia, having first taken jurisdiction of the question, is entitled to retain it; that as she has the legal right to the custody of the children, it cannot be disturbed except for the benefit of the infants; that the mother is not a fit and proper person to have the care of

Buckley v. Perrine.

girls of tender years, and the interest of the infants lies in their remaining in the custody of the respondent; that the mother is intemperate, of violent temper, addicted to the use of profane, indecent and lewd language, and has conducted herself in public and private in a lewd and indecent manner.

On the 18th of October, 1895, by the consent of counsel for Lewis Perrine and Addie Slack Perrine, John T. Bird, vice-chancellor, ordered that the petition and writ be amended by inserting therein the name of Mary Kemble Slack as petitioner, claiming the custody of the children, because, as the order recites, Addie Slack Perrine claims that Mary Kemble Slack, using the language of the order,

"is not a fit and proper person to have their custody; and the said Mary Kemble Slack being desirous of answering the said return in her own right and person, to do which it becomes necessary for her to be made a party petitioner in this cause" &c.

Mr. Buckley and Mr. Slack then traversed or answered the return of Mrs. Perrine, entitling the document as a cause in chancery, like the other papers filed in the matter. This paper admits that Mrs. Perrine is the sister of William Hall Slack, the father of the children, and that she detains the children. It denies that the detention is justifiable under the laws of the District of Columbia. It admits that William Hall Slack was domiciled in the District of Columbia to the time of his death. It denies that the children were domiciled there, and that the question as to their custody depends upon the laws in force there. It denies that a will of William Hall Slack exists, and that application for probate of a paper purporting to be such a will ousted this court of jurisdiction to determine the right to the custody of the children. It insists that that right is determined by the laws of this state, and also that it is not to the interest of the children to remain in the custody of Mrs. Perrine, and that it is to their interest to go to the custody of their mother, their guardian by nature and for nurture, because the mother is a fit and proper person, and is not intemperate, of violent temper,

19

addicted to the use of profane, lewd and indecent language, or insane, or an adulteress &c.

A traverse is also filed to the answer or return of Lewis Perrine.

On the 9th of November, 1895, on application by the solicitors of both parties, Vice-Chancellor Bird appointed a commissioner to take the depositions of witnesses, *de bene esse*, in the city of Washington.

Later, by verbal direction, he committed the custody of the children, pending the proceedings, to the custody of Mr. and Mrs. Perrine, with privilege to their mother to see them.

On the 21st of November the vice-chancellor ordered that the hearing upon the issue, whether or not the mother is a fit and proper person to have the custody of her children, proceed before him on the 26th of November.

On the 25th of November *ex parte* application, in behalf of Mrs. Slack, was made to the chancellor to refer the proceedings to Vice-Chancellor Bird (as though they were regularly pending in the court of chancery), to hear the same for the chancellor and report thereon to him, and advise what order or decree should be made therein, and an order of reference was accordingly made.

The following day the counsel for the respondents, because their clients had taken the children out of New Jersey contrary to their advice, withdrew from the case.

On the same day, which was the day previously fixed for trial by the order of the vice-chancellor, the solicitors of the respondents having stated that the respondents had taken the children beyond the jurisdiction of the court of chancery to the District of Columbia, Vice-Chancellor Bird advised an order in case of each respondent, to the effect that they be adjudged guilty of contempt, because their conduct in so doing was calculated to impede and prejudice the rights and remedies of the petitioner. These orders were subsequently signed by the chancellor.

On the same day John T. Bird, vice-chancellor, made an order, *nunc pro tunc*, signed by himself, not advised to the chancellor, as of the 11th day of November, that pending proceed-

Buckley *v.* Perrine.

ings the custody of the children should remain with the Perrines, and that the mother should see the children once a week at the state-house in Trenton.

On the same day he advised a decree in chancery, which recited the removal of the children from the jurisdiction, the withdrawal of the respondents' counsel from the case, the hearing of the proofs offered by the petitioner, and adjudged that the mother is a fit and proper person to have the custody of the children, and that the custody of the children be awarded to her during their minority. This advised decree was also subsequently signed by the chancellor.

' Motion is now made to set aside the orders which adjudge the respondents to be in contempt and the decree which awards the custody of the children to their mother.

*Mr. Richard V. Lindabury* and *Mr. Chauncy H. Beasley,* for the motion.

*Mr. Cortlandt Parker, Mr. Garret D. W. Vroom* and *Mr. Edwin Robert Walker, contra.*

THE CHANCELLOR.

. The principal objection to the validity of the orders and decree in question is, that they are not made in a proceeding in the court of chancery in which that court had jurisdiction of the respondents.

An examination of the petition for the writ of *habeas corpus* exhibits that it was an application for the appropriate use of that writ, to wit, to free the infant children of Mrs. Slack from the alleged illegal restraint of Lewis Perrine. It did not invoke the exercise of the *quasi*-paternal jurisdiction of the court of chancery over the welfare of the infants.

. I apprehend that such an application was properly made to a vice-chancellor in virtue of the supplement of May 9th, 1889 (*P. L. of 1889 p. 426*), to the *Habeas Corpus* act, which provides, using its language, that

"vice-chancellors, or either of them, shall have the same jurisdiction, power and authority to grant all writs of *habeas corpus*, and to hear and determine the same, that the chancellor of this state now has, and that he and they shall proceed in the same manner."

The power of the chancellor to issue writs of *habeas corpus* now is, and when that supplement was enacted was, co-extensive with the power exercised by the justices of the supreme court. *Baird* v. *Baird, 4 C. E. Gr. 481; P. L. of 1878 p. 370.*

As the writ is not a prerogative writ of a court whose jurisdiction, in respect of it, is preserved and protected by the constitution, the legislative power to extend its use to the vice-chancellors does not appear to be questionable.

The office of the writ, as already intimated, is to secure the production of the body of one restrained, in order that it may be freed from illegal restraint, and the matter presented for determination by the tribunal using the writ is the legality or illegality of the restraint complained of.

Incident to release from illegal restraint, for the purpose of making the release safe and effectual, the court will sometimes go beyond the mere removal of unlawful restraint and transfer the body brought before it by the writ into the custody of him who has the *clear* legal right, but this is the limit of the award of custody under the writ. *Baird* v. *Baird, supra.* The jurisdiction thus defined is widely distinguishable from the jurisdiction of the chancellor, as *parens patriæ*, to award the permanent custody of an infant, and it does not follow, from the fact that the chancellor sometimes uses the writ of *habeas corpus* as the means of bringing parties before him, in order that he may effectually exercise the latter jurisdiction, that the legislative award of the power to the vice-chancellors to use the writ of *habeas corpus* evinces an intent that the chancellor's equitable jurisdiction shall follow. The statute does not expressly declare a purpose to clothe the vice-chancellors with the chancellor's *quasi*-paternal jurisdiction in disposing of the custody of infants, and such a purpose cannot be implied from the language of the act without the aid of the untenable assumption that the chan-

cellor's jurisdiction over the custody of infants is an indissoluble adjunct of the writ of *habeas corpus* in his hands.

In *People* v. *Mercein, 8 Paige 55*, Chancellor Walworth, speaking as to the propriety of the use of the writ in the exercise of the chancellor's jurisdiction, said : "A writ of *habeas corpus ad subjiciendum,* however, is not, either by the common law or under the provisions of the revised statutes, the proper mode of instituting a proceeding to try the legal right of a party to the guardianship of an infant. This court, therefore, upon such a writ, will exercise its discretion in disposing of the custody of the infant upon the same principles which regulate the exercise of a similar discretion by other courts and officers who are authorized to allow the writ in similar cases."

In *Baird* v. *Baird,* Chief-Justice Beasley states the practice in this way : "If the simple purpose was to free from illegal restraint, the proceeding was either in the law courts or in chancery, by the instrumentality of the *habeas corpus,* and in such proceeding a court had no power to make any order which was not within the competency of a law judge. But, on the other hand, when the object was to fix the *status* of a minor with regard to permanent custody or guardianship, and to settle, for any course of time, the rights of contending parties to such custody, then the application was to the chancellor, by virtue of his general superintendency over the concerns of infants. The proceeding, then, was by petition to him as *parens patriæ.* This distinction between the chancellor's jurisdiction over infants by *habeas corpus and as wards of the court* is clearly marked in the practice and has been often noted by the court." It was held in that case that the pleadings, proofs and decree evinced that the court of chancery acted under its general superintendency over the affairs of infants as distinguishable from its more limited jurisdiction in proceedings by *habeas corpus.*

Again, in *English* v. *English, 5 Stew. Eq. 738,* the proceeding in chancery was by petition for a writ of *habeas corpus,* which alleged facts to invoke the exercise of the court's jurisdiction over the welfare of infants, and the return put that matter in issue. Mr. Justice Knapp, in writing the opinion of the court

of errors and appeals, said: " The jurisdiction of the court of chancery to settle and dispose of the care and custody of infants through proceedings like this is established. The parties in their litigation have, by their pleadings and proofs, presented issues within the cognizance of that court, under its general jurisdiction as public guardian of the rights and interests of infants. Such jurisdiction is not, by the use of the writ of *habeas corpus* to bring the infants into court, cut down and restricted to those limits which outline and bound a strict proceeding on *habeas corpus.* *The writ serves a purpose merely ancillary to the more general design of the suit to secure a definite disposition of them as wards of the court.* *Baird* v. *Baird, 4 C. E. Gr. 482.*"

And again, in the same court, in *Richards* v. *Collins, 18 Stew. Eq. 283,* where a writ of *habeas corpus* was used in chancery upon petition to the chancellor for disposition of the custody of an infant, the same judge said: " The court may stop with the mere removal of restraint, or, in its discretion, may go further and determine for the time being the custody of the subject of the writ. But the court of chancery exercises a far more extended control in respect to the right of custody of children in virtue of an inherent jurisdiction over that subject. In the exercise of this higher authority that court may permanently fix the *status* of infants even in disregard of the legal rights of parents, where the welfare of the infants requires it. *Nor is it material to the exercise of this power in what way the subject is brought into court.* In *Baird* v. *Baird* the petition was to the chancellor as one of the judicial officers authorized by statute to issue the writ, and not to him in the exercise of the more general jurisdiction of the court of chancery. But the return to the writ and the answer to the return filed by the petitioner presented a case for the cognizance of the court in its more jurisdiction. The chancellor doubted whether, in the proceeding, the general powers of the court of equity were invoked, yet, on appeal, the court of errors declared that, when an issue is made by the pleadings and proofs on the question of the right to the permanent custody of infants, the case addresses itself to the general authority of equity as the public guardian of infants. It becomes

necessary in this case to determine in which of these aspects it stands before the court. In my opinion, the pleadings present a controversy such as addressed itself to the general equitable powers of the court."

Thus it is made clear that the chancery jurisdiction over the welfare and consequent custody of infants is entirely independent of its limited jurisdiction by *habeas corpus*, and that the former jurisdiction is invoked by pleadings presenting facts which demand its exercise, and that when the writ of *habeas corpus* is used in connection with its exercise, it renders only an ancillary service.

It follows that a statute which confers upon the vice-chancellors merely the same power to issue writs of *habeas corpus* and hear and determine them that the chancellor has, cannot be construed to confer upon them the jurisdiction of the court of chancery over the well-being of infants. Taking this view of the construction of the statute, it is unnecessary to question the power of the legislature, under the constitution, to effect such a purpose.

Prior to the order of reference the proceeding considered was before Vice-Chancellor Bird, acting under the statute, and not in the court of chancery. And the proceeding evidently was not intended by the vice-chancellor to be in the court of chancery. It is true the papers were filed with the clerk of the court of chancery, and the writ was sealed with the court's seal and signed by the chancery clerk, and the papers were entitled as in a cause in the court of chancery, but it nowhere appears that any of those acts were done by the knowledge or with the permission of the court of chancery. The statute provides that a vice-chancellor issuing a writ of *habeas corpus*, and hearing and determining it, shall proceed " in the same manner" as the chancellor does upon *habeas corpus*, and I think it is evident, upon inspection of the papers in this proceeding, that the design was not to institute a suit in the court of chancery, when the original petition was presented, but to proceed before the vice-chancellor under the statute, as nearly like a similar proceeding before the chancellor as possible. The only judicial power invoked, prior

to the application for the order of reference, was "John T. Bird, Vice-Chancellor of the State of New Jersey."

It is remembered that, by article 6, section 4, placitum 1 of the constitution of the State of New Jersey, the court of chancery is made to consist of "a chancellor," and that within the last half century the business of that court has so outgrown the capacity of a single man that the legislature has created advisers of the chancellor, called "vice-chancellors," who, under orders made for that purpose by the chancellor, in his stead, hear matters pending in the court of chancery, and advise him what orders and decrees should be made in them, and that while their advised orders and decrees are not necessarily accepted and signed by the chancellor, yet, because of their great number, to facilitate the dispatch of the court's business, in absence of objection, it is the practice of the chancellor to sign them without questioning their correctness, and thereby make them the orders and decrees of the court. The action of the chancellor is thus needed to give effect to the acts of the vice-chancellors as proceedings in the court of chancery.

Now, it is observed that, after the petition was presented to Vice-Chancellor Bird and a writ of *habeas corpus* was allowed, the time for the return of the writ, by consent of the solicitors of both parties, was extended and Mrs. Perrine was made a party respondent, so that an issue as to the permanent custody of the infants might be raised, and later, that Mrs. Perrine, by her answer to the petition, insisted that, as guardian appointed by the will of the father of the children, she was entitled to their custody and could not be disturbed in it except for the benefit of the infants, and then proceeded to raise an issue as to the disposition of the infants according to their welfare, by alleging that, in fact, their mother was not a fit and proper person to have the care of girls of tender years, and that the interest of the infants lay in their continuance in custody of herself, the respondent, and that later, Mrs. Slack became a party petitioner, and, accepting the equitable issue tendered, replied to the answer of Mrs. Perrine, traversing the allegations as to her unfitness to have the custody of her children, and alleging that it was not to the interest

of the infants to remain in the custody of Mrs. Perrine, but was to their interest to be restored to the custody of their mother. Thus, by the pleadings, an issue cognizable by the court of chancery alone was presented. The case having taken this shape, it became desirable to transfer it to the court of chancery. Such was the situation when the counsel for the petitioners applied to the chancellor, *ex parte,* and obtained an order which treated the matter as one pending in the court of chancery, and, as such, referred it to Vice-Chancellor Bird to hear for the chancellor. I do not doubt that if the parties had, with knowledge of the order of reference, voluntarily proceeded to try the issues before Vice-Chancellor Bird, as an advisory officer of this court, they would have been fully within the court's jurisdiction. *Baird* v. *Baird, supra.* The difficulty encountered is that the respondents did not so proceed. The next steps in the matter were the withdrawal of their counsel from the case and the immediate procedure of the vice-chancellor, under the urgency of the petitioners' counsel, to hear the case *ex parte* and advise the orders and decree complained of, as in a proceeding pending in this court.

For aught that appears to the contrary, the respondents were in utter ignorance of the order of reference. They had no notice of the application for it. They did not, after it was made, in any manner assent to proceed in chancery under it. They have never been brought into the court of chancery by notice or process of any kind. The court had jurisdiction of the issues between the parties, it is true, and its order of reference expressed its willingness to proceed with the determination of those issues, but the order was had without the assent of the respondents, and did not give the court of chancery jurisdiction over them. The court lacked jurisdiction of those parties, which, beyond all question, was necessary to the validity of the orders and decree complained of. In absence of it, the orders and decree must be held to be without force, and for that reason, so far as they purport to be proceedings of this court, they will be set aside.

The motion must prevail.