WILLIAM H. DIXON

*v.*

JOSEPHINE T. DIXON.

[Decided June 17th, 1910.]

Where, after the obtaining by a husband of a decree relating to the custody of his children and providing for visits to the husband and wife respectively, the wife obtained in another state a decree of divorce in an action which the husband though notified did not contest, giving her the custody of such children, and both the wife and children are residents of such other state, an order will not be granted by the courts of this state making more precise the original order as to the custody; but the application should be made to the courts of such other state.

*Mr. Richard V. Lindabury,* for the petitioner.

*Mr. Gilbert Collins* and *Mr. Symonds* (of Maine), for the defendant.

STEVENS, V. C.

This is an application to modify an order heretofore made in the case, by making it more precise. The order directs that the two children of petitioner and defendant, whose custody was given to the mother, be sent with their nurse to visit their father two months in each year; one month during the summer or early autumn at his country home in Pittsfield, Massachusetts, and one month during the winter at his home in New York City. The petition alleges that the order has been disobeyed, and it prays that it may more definitely specify when the children shall be sent to visit their father. Under ordinary circumstances, the parties failing to agree upon the times, the order would be made as a matter of course. The motion is resisted, not on the ground that the parties cannot agree on the time, but on the ground that the

order has been superseded altogether by a decree of divorce made by the supreme court of Maine in favor of the wife against the husband, in which decree there is a provision that

"the care, custody and support of the children be given to the libellant; either party hereto to have the right to apply to this (the Maine Supreme) court for a modification of so much of this decree as relates to said minor children."

I have already considered the various phases of this case in three opinions—*Dixon* v. *Dixon, 71 N. J. Eq. (1 Buch.) 281; 72 N. J. Eq. (2 Buch.) 588; Dixon* v. *Dixon, 76 N. J. Eq. (6 Buch.) 364*. In the last, I came to the conclusion that the decree of this court was, notwithstanding the interlocutory order made with respect to the custody of the children, by a justice of the supreme court of Maine, still in force, and, under the federal constitution, entitled to full faith and credit. The Maine decree, in so far as it has affected the status of the parties as man and wife, must be regarded by the courts of this state as valid, whatever view the courts of New York, where the defendant has his domicile, may, under their law, take of it; but in so far as it is inconsistent with the prior adjudication of this court giving to the father a limited right to his children's society, it is open to the objection that was successfully made to the interlocutory order. It is not pretended that in the progress of the divorce proceedings such an issue was presented and passed upon as could alone have superseded the prior adjudication of this court.

There is, however, a sufficient reason why the present application should be denied. It is that both the mother and the children are now resident in Maine and obedience to any order which this court might make cannot be enforced. In *Hope* v. *Hope, 4 DeG. M. & G. 347*, the controversy was over children of a father who was an English subject, and of a mother who, with her children, was actually resident in France. In the course of his opinion, Lord Cranworth says: "Assuming then that neither the circumstances of the infant having been born abroad nor being still abroad affects the jurisdiction, the question remains whether I ought in the present instance to exercise the jurisdic-

tion. There might be cases in which it might be improper that I should attempt to exercise it, as for example, where both the parents should be abroad and there should be no property here, though as I have before observed, I would not, even in such a case, say that I had no jurisdiction if a bill were filed." This is the very situation presented by the case in hand, except that here the father is not now, and never has been, a citizen of this state, and does not, therefore, stand in the more favorable position of the supposed English father, seeking redress in an English court. The chancellor continues: "I should, in all probability, not make an order, because the parties would not be within my control and they might disobey. I should feel that I was doing no good, but incurring a sort of scandal, as every court does, if it attempts to make an order which it has no power of enforcing."

The question, as shown by the paragraph quoted, is not one of jurisdiction but of expediency. Viewing it in this light, I cannot fail to see that the court is not in a position to control either father, mother or children. There is no probability that any order which this court might now make, would, at present, be respected by the mother. If I am right in the views that I have expressed on two former occasions, the orders already made are, by the federal constitution, entitled to full faith and credit and can be enforced anywhere within the United States. If they have not been enforced by the Maine tribunals, it is, as I must assume, because they have not been, by an issue properly framed, brought to its attention. Their enforcement has not been sought. The husband, though he had actual notice of the Maine proceeding and of its scope, did not see fit to appear and contest either the wife's right to a divorce or the wife's claim to have the sole custody of the children.

Whether had the wife presented a proper issue as to their custody, the decision on that issue would, in the absence of the husband, have been binding upon him in New York, I do not know. Undoubtedly, it would have been binding here, for in this state we recognize, to a limited extent, the right to give extraterritorial notice. The only reason why the Maine proceeding, in so far as it relates to the infants, does not bind here, is that no proper issue was made as to whether there had been such a change in the sit-

uation as it existed on July 24th, 1907 (the time when the last order was made by this court), as between parent and child—not as between husband and wife—as would justify the Maine court in totally depriving the father of his children's society. Not having been made, the husband has still the right which the orders of this court gave him. The Maine decree is no bar.

Shall, then, the petitioner—a citizen of New York—come here for relief or go to Maine for relief? If he comes here, no substantial relief can be accorded to him. If he goes to Maine, where his children are, the Maine courts are able to give him, and no doubt will give him, such relief as he is, under existing circumstances, entitled to.

I was at first inclined to think that there could be no objection to making the order asked for. Subsequent consideration has led me to think that to do so would answer no useful purpose. Why seek to limit the Maine tribunal in a particular that had better be left open to the exercise of its discretion? That that tribunal is as capable of doing complete justice to the parties as this court is, goes without saying.

The situation is this: A citizen of New York has obtained a decree as binding in Maine as here. He can only get effective relief upon it in Maine. He will, if he really desires the only thing which this court would be disposed to aid him in obtaining, viz., the society of his children, go to the Maine courts to make his right effective.

Those courts have the right, if the situation has undergone a change since July, 1907, to modify the order of this court, both as respects time and other circumstances.

To attempt to bind them in advance as to the matter of time—a matter peculiarly subject to variation—would be inexpedient and probably futile.

I think the petition should be dismissed, but without costs.