This is a hearing on the return of a writ of habeas corpus
obtained by Ellen S. Erving, a citizen of New York, who seeks the custody of a child, Christian Juell, Jr., aged fourteen. The boy has lived with his father in Glen Ridge, New Jersey, since July 15th, 1929. Mrs. Erving (then Mrs. Juell) and her husband were divorced in the State of New York. The custody of the child was awarded to the mother. She did not treat him properly. He had to get his own meals, and sometimes when he came home to dinner he found himself locked out and had to wait outside until eleven or twelve o'clock at night until his mother's return. After the divorce she married a man with whom she had had illicit relations, as shown by the fact that she gave birth to a child five months after the marriage. In May, 1929, she sent the boy to Norway on a whaling ship, without a passport, in spite of the fact that the New York court had given the father his custody from Friday to Monday of each week. This was without the father's knowledge. She deceived him as to his son's whereabouts. She admitted that her purpose was to keep the boy forever out of the United States and where the father would never see him again. Mr. Juell, with the aid of the state department in Washington, secured the boy's return.
On July 21st, 1925, a final judgment for divorce was granted to petitioner and the custody of the infant was awarded to her. After Mr. Juell secured the return of the boy from Norway, he took him to live in Garden City, Long Island. Mr. Juell then made application to the supreme court of New York for a modification of the final decree and the matter came on before Mr. Justice Cropsey, who, on June 6th, 1929, filed the following memorandum:
"The plaintiff had no right to send the son of the parties to Norway. Her actions show she knew she did wrong. She concealed the fact, though still willing to accept the money paid by the defendant for his support. At the present time the court will amend the judgment by providing that the boy's custody be given to the defendant until Setpember 1st, 1929, *Page 296 
when further application may be made. Motion granted, as indicated. Settle order on notice."
An order modifying the original decree in accordance with the decision was made on June 12th, 1929. About the 26th of September, 1929, Mrs. Juell applied to the Supreme Court of New York for a further order with respect to custody as permitted by the order of June 12th, 1929, and the matter again came on before Mr. Justice Cropsey on November 7th, 1929, who filed the following memorandum:
"The boy is in a boarding school which seems to be a good place for him. I have talked to the boy since his return from Europe about the middle of July. His mother has not made much effort to see him. Motion denied. The boy may remain with the father for the present. Further application may be made in June."
On November 23d 1929, an order was made upon the decision denying Mrs. Juell's application.
On August 6th, 1930, while the boy and his father were both living in New Jersey — the boy in his father's custody by order of the New York court — the supreme court of New York awarded the custody of the boy to Mrs. Juell. That order was never made effective for both the father and the boy were without the State of New York.
In the month of January, 1931, a writ of habeas corpus was issued out of the supreme court of New York by Mrs. Juell, which writ was served on Mr. Juell while temporarily in New York. Mr. Juell entered a special appearance which was overruled. Thereupon, on January 10th, 1931, an order was made awarding the sole custody of the infant to Mrs. Juell, and directing Mr. Juell to immediately surrender his custody to her. It is claimed by Mr. Juell that the service of the writ of habeas corpus on him was by trickery. It is not questioned that, at the time of the institution of the habeas corpus proceedings which resulted in the order of January 10th, 1931, both Mr. Juell and the boy had been residents of the State of New Jersey for upwards of a year and a half and that, at the time of the entry of the order of August 6th, 1930, the boy had not been within the jurisdiction of the State of New York for a like period. *Page 297 
1. It is insisted by petitioner that this court is bound by the orders of the New York supreme court of August 6th, 1930, and January 10th, 1931, both of which awarded the custody of the boy to petitioner. I think not.
Section 18 (2 Comp. Stat. p. 2809), reads:
"After a divorce decreed in any other state or country, if minor children of the marriage are inhabitants of this state, the court of chancery, on the petition of either parent, or of a next friend in behalf of the children, such notice being given to parents as the court shall direct, may make such decree concerning their care, custody, education and maintenance as if the divorce had been obtained in this state."
By section 97-21 (1 Cum. Supp. Comp. Stat. 1911 to 1924p. 1556) it is provided that, in the absence of misconduct, the rights of each parent shall be considered equal and that "the happiness and welfare of the children shall determine the custody or possession."
And section 97-22 (1 Cum. Supp. Comp. Stat. 1911 to 1924p. 1556) in part reads as follows:
"* * * and in no case shall the court having jurisdiction in this state over the person and custody of any minor permit such child to be removed from this state where the mother or father resides in the State of New Jersey and is the suitable person who should have the custody of such child for its best welfare."
Besides the jurisdiction conferred upon the court of chancery by statute, it has authority under its general equity powers to deal with the custody of infants, which authority is in no way dependent upon statute. Its authority is so broad that the permanent custody may be fixed even in disregard of the legal rights of parents where the welfare of children requires it.Richards v. Collins, 45 N.J. Eq. 283; Kopcinski v.Richardson, 94 Atl. Rep. 32; Buckley v. Perrine, 54 N.J. Eq. 285; Cole v. Cole, 89 N.J. Eq. 381.
Petitioner relies upon Dixon v. Dixon, 76 N.J. Eq. 364.
Prior to the proceedings considered in that case, a father, living separately from the mother, had petitioned for the custody of his children for the whole or part of the time, the children and the mother living in this state. All parties *Page 298 
had been brought before the court and a decree had been made committing the custody of the children to the mother but providing for visitation by the father. That decree had been affirmed by the court of errors and appeals. 71 N.J. Eq. 281.
Subsequently the mother removed to Maine. A second order was then made by this court (72 N.J. Eq. 588), which was acquiesced in and obeyed until the mother instituted a divorce proceeding in Maine. This court said that, notwithstanding the fact that the children had been removed to Maine, still by virtue of the fact that, at the time the first order was made, it had full and complete jurisdiction of both the parties and the children, the children having been brought into court by habeas corpus, it might make an order affecting their custody and if necessary might order them to be kept within the state. Upon the wife instituting divorce proceedings in Maine, an order was made by the Maine court awarding the sole custody of the childrenpendente lite, to the mother. Thereupon, the husband instituted proceedings in New Jersey in contempt against the mother and also asked that the custody of the children be awarded to him. The mother appeared. This court said (76 N.J. Eq. 364) that its orders were within the protection of that clause of the federal constitution which declares that "full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state." It recognized that orders affecting custody of children, however final in form, were always temporary in nature but said there was no indication that there was any proof before the Maine court of any change in circumstances which would permit that court to disregard the orders made by this court. It held, however, that, it not appearing that the mother intended to disobey the order, she would not be adjudged in contempt and that, it not appearing that there was any change in the situation as it existed at the time the last order of this court was made, no new order with respect to custody would be made. 76 N.J. Eq. 364. The wife disobeyed the order, obtained a decree for divorce in Maine, which the husband did not contest, and the Maine court in the divorce decree *Page 299 
granted the custody of the children to her. Thereupon the husband applied to this court for an order to make its order more precise (77 N.J. Eq. 313) and the contention was made for the wife that the Maine decree had superseded the order of this court. Vice-Chancellor Stevens said (77 N.J. Eq. — at p. 314):
"It is not pretended that in the progress of the divorce proceedings such an issue was presented and passed upon as could alone have superseded the prior adjudication of this court."
But denied the relief asked for the reason that both the mother and the children were then resident in Maine and "obedience of any order which this court might make cannot be enforced."
The Dixon Case is the only one in this state which considers the subject here under discussion, as far as I have been able to ascertain. It may be distinguished. In that case, at the time of the making of the first order fixing the custody of the children, they were before this court produced in response to a writ ofhabeas corpus. At the time of the making of the second order the mother appeared and the litigation was upon the merits and the children were still, at least constructively, before this court, no question being raised as to their physical presence in Maine. This court had control of the mother and, as it stated (72 N.J. Eq. — at p. 592), might have ordered the mother to produce the children here. It did not do so. In the instant case, at the time the orders of August 6th, 1930, and January 10th, 1931, were made by the New York court, the child was not before that court. At the time of the making of the last order of January 10th, 1931, the boy and the father had been residents of the State of New Jersey for upwards of a year and a half, and at the time each order was made, under our statute and the common law, the boy was a ward of this state. The last order made by the New York court, at a time when the boy was before that court, was the order of November 23d 1929, which left his control to the father. Under the law of this state a child is not a chattel, and our legislature has *Page 300 
confided to this court the duty of determining the custody of children within this state, in all cases where the parents are living separately, including those cases in which there has been a divorce decree in any other state. The court of chancery is admonished by the statute in peremptory language to determine custody as the happiness and welfare of the children require. It is also directed not to permit a child, over which it has jurisdiction, to be removed from this state, if the mother or father herein resides and either is a suitable person to have the custody.
Vice-Chancellor Leaming in Kopcinski v. Richardson, supra, after quoting from Richards v. Collins, supra, said:
"It will thus be seen that a child cannot be lawfully regarded as a mere inanimate chattel which must be restored to the lawful owner in all circumstances. Like the parent, the child has rights, and the strict legal rights of a father, as such, can only be enforced in this court with proper regard to the best interests of the child."
Vice-Chancellor Fallon said, in In re Pfahler, 102 N.J. Eq. 161:
"It has been repeatedly held that the legal right of the father to the custody of a child cannot be disregarded without justifiable cause. But that right must be held in subordination to and exercised in consistency with the rights, the moral training, and the highest welfare of the child. See Albert v.Perry, 14 N.J. Eq. 540; Winans v. Luppie, 47 N.J. Eq. 302.
All of the cases indicate that `the highest welfare of the child' should be the concern of the court."
Vice-Chancellor Bentley, in the case of In re Lippincott,96 N.J. Eq. 260 said (at p. 262):
"The paramount consideration in all such cases is the welfare of the child itself. Richards v. Collins, supra. This case, as said by Vice-Chancellor Lane in Cole v. Cole, 89 N.J. Eq. 381,
has been uniformly cited with approval. It is an opinion by the court of errors and appeals and the leading case on this subject. It is there said:
"`In a controversy over its [a child's] possession, its welfare *Page 301 
will be the paramount consideration in controlling the discretion of the court. The strict right of the parent will be passed by, if a judgment in observance of such right would substitute a worse for a better custodian.'
"Mr. Justice Minturn, in Fischer v. Meader, 95 N.J. Law 59, and Vice-Chancellor Leaming, in Kopcinski v. Richardson,supra, deal at great length with the fact that the day has long since passed when the rights of infants, to be properly nurtured, are subordinate to the strict legal rights of parents or others in and over them, and they regarded as chattels to be disposed of as if title to them passed like any ordinary property."
Vice-Chancellor Buchanan said in Ex parte De Bois, 7 N.J. Mis.R. 1029; 148 Atl. Rep. 10 (at p. 12):
"It may be added that the child is seventeen years of age and of normal mental development, and that her desire is for her father as guardian; this is a factor entitled to strong consideration."
My conclusion, therefore, is that the remarks of Vice-Chancellor Stevens in Dixon v. Dixon do not apply to the situation presented here. Whether the orders of the New York court are res adjudicata as between the father and the mother is beside the issue, which is whether those orders can bind this court as against the infant boy, in determining where his custody should go, he being a resident of this state and subject to its jurisdiction. Each state has the power to determine the status of persons within its jurisdiction and it seems to me that the New York court had no power to make any order with respect to the boy within the jurisdiction of this court, which would be binding upon him. It is significant that Vice-Chancellor Stevens in theDixon Case did not consider this phase of the subject.
The Kansas court in In re Bort, 25 Kan. 308; 37 Am. Rep. 255,
denied the binding force of a decree of a Wisconsin court as to custody of children, and Mr. Justice Brewer, afterwards a justice of the supreme court of the United States, speaking for the Kansas court, said (at p. 256): *Page 302 
"The petitioner invokes the benefit of that clause of the federal constitution which provides that full faith and credit shall be given in each state to the judicial proceedings of every other state, and insists that that decree concludes the question as to the rights of the respective parents at its date, and that unless some subsequent change in the relative position and fitness of the respective parties is shown, the custody must be given to the father. This claim seems to rest on the assumption that the parents have some property rights in the possession of their children and is very justly repudiated by the courts of Massachusetts. 2 Bish. Mar. D. (5th ed.) 204.
"We do not, however, propose to place our disposition of this case upon the decision of any such question as that. We shall concede, that as between the parents, that decision is a finality, and still we do not feel warranted in sustaining the petition of the plaintiff.
"We understand the law to be, when the custody of children is the question, that the best interests of the children is the paramount fact. Rights of father and mother sink into insignificance before that. Even when father and mother are living together, a court has the power, if the best interests of the child require it, to take it away from both parents and commit the custody to a third person. In other words, a court of chancery stands as a guardian of all children, and may interfere at any time and in any way to protect and advance their welfare and interests. Now, in a divorce suit, the court is limited to the question: Which of the two parents is the better custodian of the children? The decision only determines the rights of the parties inter sese. But in this proceeding the question is: What do the best interests of the children require? Shall they be given to either party? Or shall the court place the custody with some other person?"
This decision was in 1881.
To the same effect is the decision of the North Carolina supreme court in Ex parte Alderman, 157 N.C. 507;79 S.E. Rep. 126; 39 L.R.A. (N.S.) 988, in 1911, and a *Page 303 
note will be found to that case in 39 L.R.A. (N.S.) 988.
And see, also, People, ex rel. Allen v. Allen, 105 N.Y. 628;11 N.E. Rep. 143, and 2 Schoul. Mar., D., S. Dom. Rel. (6thed.) § 1896, published in 1921; Geary v. Geary,102 Neb. 511; 167 N.W. Rep. 778; 20 A.L.R. 809 and note; Wear v. Wear,130 Kans. 205; 285 Pac. Rep. 606; 72 A.L.R. 425 and note.
The remarks of Vice-Chancellor Stevens in Dixon v. Dixon
upon this subject are, in reality, judicial obiter, for they do not form the basis of any order which he made, and there could have been no appeal which would have raised this issue.
3. If the order of the New York court should be given any effect in this state, still all orders for the custody of a child are subject to constant change according to circumstances. This is apparent from the case now under discussion. The New York court has made four orders — two on one side, one on the other, and one dividing the custody. McCormack v. McCormack, 3 N.J.Mis. R. 624; Power v. Power, 65 N.J. Eq. 93. It has not been developed what the situation was as presented to the New York court and I must deal with the situation as it now appears.
4. On the merits I find that the best interest of the child would be promoted by his remaining with his father. He has a comfortable home, goes to school and Sunday school, belongs to the Boy Scouts, and in every respect is leading the life of a normal, healthy boy of his age. Moreover, he has expressed to me vigorously in person his desire to remain with his father. He has stated that his father is kind and considerate to him and that his mother was not so. On the other hand, when we examine the condition of his mother, we find that at present she has no position, she does not work and she sends the child of her second marriage to her husband's uncle in Manville, New Jersey. Her present husband was a vaudeville actor and is now at Saranac Lake being treated for tuberculosis. I cannot see, on her own testimony, how she can pay, as she testifies, $50 for rent and *Page 304 
support herself besides. According to the evidence she has no apparent income. The father, on the other hand, although his past history is far from perfect, seems now to have a comfortable home for his son and to be interested in taking proper care of him. His second wife is devoted to the boy and does all she can to help him.
The application of the mother will be denied and, the child having been produced before me in response to the writ of habeascorpus, an order will be made committing his custody to the father, with such provisions as to visitation as may be proper.
Application to settle the order may be made on five days' notice.