### IN RE HUGH ALDERMAN.

#### (Filed 20 December, 1911.)

1. **Habeas Corpus—Custody of Child—Controlling Considerations.**
   Upon proceedings in *habeas corpus* by a father for the posses-
   sion of his child in the custody of its mother, the mother's pos-
   session will not be disturbed if it appears that therein the
   physical, moral, and spiritual welfare of the child will be the
   better preserved.

2. **Federal Constitution — "Full Faith and Credit" — Judgments —
   Divorce.**
   The courts of this State will give full faith and credit under
   the Federal Constitution to a decree of divorce rendered in
   another State as regards its own citizens.

3. **Parent and Child — Property — Vested Rights — Divorce—Judg-
   ment—Extraterritorial Jurisdiction.**
   A child is not regarded as the property of the parent so as to
   give him a vested right in the child or its services under a decree
   of divorce, and the decree in this respect has no extraterritorial
   effect beyond the boundaries of the State where it was rendered.

4. **Same—Habeas Corpus—Custody of Child.**
   After a decree of divorce in another State awarding the care
   of the child of the marriage to the mother, the mother and child
   became citizens and residents of North Carolina, and while so
   residing the father brought proceedings here in *habeas corpus*
   for the custody of the child, which was denied. The father then
   contended that according to the decree of divorcement he was
   entitled to visit the child, etc.: *Held*, the decree relied upon was
   not subject to this interpretation; but, if otherwise, it would
   not have extraterritorial effect, under the full faith and credit
   clause of the Federal Constitution, beyond the State wherein it
   was rendered, so as to affect the inherent power of this State in
   awarding the custody of the child, which had become domiciled
   here.

APPEAL from judgment of *Webb, J.,* rendered in *habeas
corpus* proceedings 2 August, 1911, from BUNCOMBE.

This is a proceeding in *habeas corpus* instituted by the peti-
tioner, William F. Alderman, to determine the custody of Hugh
Alderman, the infant son (4 years of age) of petitioner and his
former wife, the respondent, Sarah E. Alderman, who now
resides with her child at Brevard, North Carolina. The cause

was heard in the Superior Court of Buncombe County by his Honor, *Judge Webb,* who made findings of fact and rendered judgment as follows:

This cause coming on to be heard before the undersigned judge, *James L. Webb,* and being heard upon the affidavits filed by both plaintiff and defendant, I find the following facts:

1. I find as a fact that W. F. Alderman and Sarah E. Alderman were married in the State of Florida about 7 June, 1899, and lived together as man and wife until about the . . . . day of . . . . . . . . ., 1909.

2. I find as a fact that during the years 1909 and 1910 W. F. Alderman abandoned Sarah E. Alderman, and thereupon, Sarah E. Alderman, who was then with her child, Hugh Alderman, visiting her parents in the State of North Carolina, instituted divorce proceedings in the courts of the State of Florida, alleging willful, continued, and obstinate desertion on the part of W. F. Alderman; and the said Sarah E. Alderman was on 28 February, 1911, granted a divorce from the bonds of matrimony upon the ground of willful, continued, and obstinate desertion.

3. I find as a fact that during the relationship of man and wife between the plaintiff and the defendant there was born Hugh Alderman, the child in question, who is now a little more than 4 years of age.

4. I find as a fact that in the decree that was signed in the divorce proceedings in the State of Florida, rendered 28 February, 1911, the following clause and paragraph appears: "It is further ordered, adjudged, and decreed that the complainant, Sarah E. Alderman, have and she is granted the custody of the child, Hugh Alderman, provided that the defendant, W. F. Alderman, shall be allowed to visit said child at such times as may to the said Sarah E. Alderman seem reasonable, and the child, Hugh Alderman, may visit the defendant, William F. Alderman, at such times and under such circumstances and conditions as are reasonable and expedient, and the child may at least be permitted to visit said William F. Alderman for two weeks at a time every three months if the said William F. Alderman so desires or elects."

5. I find as a fact that the child, Hugh Alderman, is a frail and delicate child, and that said child was at the time of the institution of the divorce proceedings in the State of Florida, and prior thereto, and has been at all times since, residing with its mother, Sarah E. Alderman, and grandparents, Rev. Paul F. Brown and wife, at Brevard, Transylvania County, N. C.

6. I find as a fact that the child's health is such that it would jeopardize it to carry it from the mountains of Western North Carolina to the State of Florida, especially during the warm season of the year.

7. I find as a fact that the mother of the child, Sarah E. Alderman, is an intelligent, refined, Christian woman, living with her parents, Rev. Paul F. Brown and wife, at Brevard, N. C., and that Rev. Paul F. Brown is the pastor of the Presbyterian Church in Brevard, N. C.

8. I find as a fact that Sarah E. Alderman, the mother of Hugh Alderman, and her parents, Rev. Paul F. Brown and wife, the grandparents of Hugh Alderman, are people of sufficient means to properly care for and make comfortable and educate the child, and I further find that the moral welfare of the child, Hugh Alderman, is being well guarded.

9. I further find as a fact that prior to the institution of the divorce proceedings in the State of Florida by Sarah E. Alderman v. W. F. Alderman, and since said proceedings were instituted, and prior to and since the decree of separation and divorce was rendered therein, the said William F. Alderman had in his employ a stenographer, one Georgia V. Farmer, and that he became infatuated with said woman, conducting himself in a way not becoming a man of a family, with a living wife; that he showed the said Georgia Farmer many attentions in various ways: riding upon street cars with her, carrying her to restaurants, theaters, purchasing small articles of various kinds for her, taking trips with her on trains, visiting her boarding-house, removing the photo of Sarah E. Alderman, his wife, from the locket on his watch chain, which locket contained the miniature photo of Sarah E. Alderman and one of their children, now dead, and placing in said locket the miniature of Georgia Farmer.

*In re* ALDERMAN.

I further find as a fact that William F. Alderman, prior to the date of the decree in said divorce proceedings and while the decree for alimony was being considered, had one Roena Floyd, a single woman, to deed to Georgia Farmer, his stenographer, for a nominal sum of ten dollars, a house and lot in the city of Jacksonville, Florida, and the said deed was not registered until after said decree for divorce was signed, to wit, on 23 March, 1911.

I further find that after the institution of this suit in the Superior Court of Buncombe County to obtain the child, Hugh Alderman, the said William F. Alderman attempted to kidnap or get possession of the said Hugh Alderman, by having a colored boy to secretly get him out of the possession of his mother, Sarah E. Alderman, carry him to Hendersonville, through the country, a distance of twenty miles, there to be turned over to William F. Alderman to be carried to the State of Florida.

10. I further find as a fact that William F. Alderman has no permanent place of abode, no settled home, in which to properly care for the child, Hugh Alderman, and I further find as a fact that the said William F. Alderman is not a suitable person to have the care and custody of the child, Hugh Alderman, at this time.

11. I further find as a fact that Sarah E. Alderman, the mother of Hugh Alderman, is a fit and proper person to have the care and custody of Hugh Alderman, the child in question, in looking after the health, training, and moral development of the child.

12. I further find as a fact that Sarah E. Alderman does not object to W. F. Alderman visiting and being allowed to see the child, Hugh Alderman, under proper and reasonable conditions.

The foregoing facts are found from the large number of affidavits, perhaps fifty or more, filed by both plaintiff and defendant, and from the facts appearing and found by me, I conclude as a matter of law:

1. That the court is of the opinion that this is not a proper case where the writ of *habeas corpus* will lie.

*In re* ALDERMAN.

2. That if it is a case where such writ will lie, from the foregoing findings of fact, the court is of opinion that it is for the best interest of the child, Hugh Alderman, to be left in the possession of and under the care and custody of its mother, Sarah E. Alderman, and it is so ordered.

3. It is further ordered that W. F. Alderman be allowed to visit said child, Hugh Alderman, at the home of its mother at such times and under such conditions as the mother of said child may deem advisable.

4. It is further ordered that the prayer of the petitioner be and the same is hereby refused, and it is further ordered that the petitioner, W. F. Alderman, pay all the cost of this action to be taxed by the clerk of the Superior Court of Buncombe County.                    JAMES L. WEBB, *Judge.*

To the foregoing order and judgment the petitioner, W. F. Alderman, excepts and appeals to the Supreme Court. Notice of appeal waived, and the appeal bond fixed at $50.

All papers in the case, including all affidavits and the foregoing findings of fact and judgment, shall constitute the case for the Supreme Court.

(Judgment filed 2 August, 1911.)

                    JAMES L. WEBB, *Judge.*

From this judgment the petitioner, William F. Alderman, appealed.

*D. L. English and Mark W. Brown for petitioner.*
*Welch Galloway for respondent.*

BROWN, J. It appears from the findings of his Honor that the petitioner and respondent were divorced by the courts of the State of Florida, where they resided in 1909 and 1910, at the instance of the respondent, upon the ground of willful, continued, and obstinate desertion by petitioner of his wife and only child, and the general custody of the child was awarded to the mother, who afterwards removed with her child to Brevard, N. C., where she now resides with her father.

The custody of children in cases of the divorce and separation of their parents is a subject as delicate as any with which courts have to deal.

The good of the child should be, and always is, the chief thing to be regarded and the governing principle which guides the judge. All other considerations sink into insignificance. Many cases and text-writers can be cited where the principle is announced that the physical, moral, and spiritual welfare of the child is the only safe guide in cases of this kind; and the courts will be guided by those surroundings. *In re Lewis,* 88 N. C., 34; *Jones v. Cotton,* 108 N. C., 458; *In re Turner,* 151 N. C., 474; Hurd on Habeas Corpus, 528; Schouler on Dom. Rel., 248; 2 Bishop M. and D., sec. 529; *Umlouf's case,* 27 Ill. App., 378.

One who reads the findings and the judgment of the just and learned judge who heard this matter in the court below must conclude that no other consideration than the child's welfare influenced his decision to remand the child to the care of its best friend, the mother. The love of the mother for her child, regardless of conditions and environments, has been proven by the history of the ages, and while her devotion can be counted upon almost unfailingly, it is sad to say that sometimes the tie between father and child is a different matter and requires the strong arm of the law to regulate it with some degree of humanity and tenderness for the child's good.

But the petitioner contends that under the Florida decree he has a vested right in the partial custody of the child, which this Court is bound to respect and enforce under the full faith and credit clause of the Federal Constitution.

That part of the decree of the Florida court which petitioner invokes reads as follows: "W. F. Alderman shall be allowed to visit said child at such times as may to said Sarah E. Alderman seem reasonable, and the child, Hugh, may visit the defendant, W. F. Alderman, at such times and under such circumstances and conditions as are reasonable and expedient, and said child may at least be permitted to visit W. F. Alderman for two weeks at a time, etc., if W. F. Alderman desires." The language used would seem to indicate that the mother is expected to exercise careful supervision and control over the child, and that her consent or permission is necessary before the child can visit its father even for two weeks at a time. But, nevertheless,

if the language used was compulsory in its terms, that clause of the decree is not such a judgment of another State which the courts of this State are bound to enforce.

All States and governments possess inherent power over the marriage relation, its formation and dissolution, as regards its own citizens, and as both the husband and wife were citizens of Florida and properly before its court as parties to the suit, we must give full faith and credit to the annulment of their marriage. *Atherton v. Atherton,* 181 U. S., 155; *Haddock v. Haddock,* 201 U. S., 563.

But the infant child of their union is not property, and the father can have no vested right in the child or its services under a decree divorcing the parents. Such decree, as to the child, has no extraterritorial effect beyond the boundaries of the State where it was rendered. The child is now a citizen of North Carolina and as such peculiarly under its guardianship, and the courts of this State will not remand it to the jurisdiction of another State, especially where, as in this case, it is so manifestly against the true interests of the child. "Minors are the wards of the Nation, and even the control of them by parents is subject to the unlimited supervisory control of the State." 1 Tiedeman State and Fed. Con., p. 325; *Starnes v. Manufacturing Co.,* 147 N. C., 559. In this case it is said: "The supreme right of the State to the guardianship of children controls the natural rights of the parent when the welfare of society or of the children themselves conflicts with parental rights."

Therefore it follows that when this child became a citizen and resident of this State and duly domiciled here, it is no longer under the control of the Florida courts.

In the case of *Frank Bort,* 25 Kansas, 308, the full faith and credit clause of the Federal Constitution was invoked by the petitioner in support of his supposed right under a decree in another State.

*Mr. Justice Brewer* (afterwards of the Supreme Court of the United States) denied the correctness of such position, saying: "This claim seems to rest on the assumption that the parents have some property rights in the possession of their children, and is very justly repudiated by the courts of Massachusetts." 2 Bishop on Mar. and Div., 5 Ed., 204.

The same question was before the Kansas Court again in 1885, and it held that the decree of the foreign court in no manner concluded other courts of the State where the child is then residing, as to the best interests of the child. *Avery v. Avery,* 5 Pac. Rep., 419, citing and approving *In re Bort.* To the same effect is the decision of the Court of Appeals of New York in *People v. Allen,* 105 N. Y., 628.

In *Wilson v. Elliott,* 96 Tex., 474, the same question was considered by the Supreme Court of Texas and it was held that the decree of the court of another State awarding the custody of a child was not binding upon the courts of Texas under the full faith and credit clause of the Federal Constitution after the child had become domiciled in Texas. The Court says: "Were the subject-matter of the decree property, or a matter in which the parents were solely concerned, the decree would, by reason of said article, be entitled to the effect which the trial court has given it. But neither of these propositions is true. The child is not in any sense property of the parents. It is also equally well established that the Government has an interest in the welfare and consequently in the question of the custody and environments of the child, and to this the rights of the parents are entirely subordinate." See, also, *Legate v. Legate,* 87 Tex., 252; *S. v. Michell,* 54 L. R. A., 927.

The judgment is

Affirmed.