No. 29,309.

JUANITA C. WEAR, *Appellee*, v. THOMAS O. WEAR, *Appellant*.

(285 Pac. 606.)

Opinion filed March 8, 1930.

*C. A. Smart,* of Lawrence, for the appellant.

*Walter G. Thiele* and *H. H. Asher,* both of Lawrence, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an appeal by respondent in a proceeding for habeas corpus brought for the custody of a child. The petitioner is the mother and respondent is the father of the child in question. The point presented is that of the domicile of the child, and appellant's complaint is that the trial court followed the decree of the court of another state, deeming itself bound by such decree, instead of trying out the issue presented by the pleadings, among which was that of the domicile of the child.

The facts disclosed by the record pertinent to our present inquiry may be thus stated: Thomas O. Wear and Juanita C. Wear were

husband and wife, and the parents of Thomas O. Wear, Jr., a boy now about eight years of age. They had lived at various places in Oklahoma and Missouri when the husband had work, and in the months early in 1929 were living in Oklahoma City. Some time in April, 1929, Thomas O. Wear took his personal effects, and leaving his wife, child and household goods in Oklahoma City, came to the home of his brother-in-law and sister, Mr. and Mrs. Ralph L. Coleman, with whom his parents resided, near Lawrence, in Douglas county, Kansas. In June, 1929, Mrs. Wear sent the boy to Lawrence, Kan.; the father met the boy there and took him to the home where he was staying. The circumstances and understanding, if any, of the boy's coming to Kansas enter into the question of his domicile and will be later discussed.

In July, 1929, Mrs. Wear brought, in the district court at Oklahoma City, a divorce suit against her husband, on the ground of gross neglect of duty, in which she asked for the custody of the child in question. The defendant, Thomas O. Wear, appeared in that case, and on August 1, 1929, filed an application for an order restraining the plaintiff from molesting or interfering with the custody of the child pending the action, setting out that plaintiff was seeking to obtain such custody, and averred that the domestic difficulties between the parties were the fault of plaintiff, and that plaintiff was not a fit and proper person to have the custody of the child, all of which defendant would show at the hearing of the action on its merits. The restraining order was granted *ex parte*. When plaintiff learned of this she moved that it be set aside, and upon the hearing of that motion, August 3, it was set aside. Defendant later, on August 19, filed a general demurrer to plaintiff's petition. This came on for hearing August 22, was overruled and held to be frivolous, and on defendant's request he was given time to answer. On August 23 he filed an answer in which he denied generally the grounds for divorce charged against him in plaintiff's petition, and at some length set out his claims with respect to their domestic troubles, and particularly denied and explained the charge of non-support made against him. As to how the child came to be with him the answer stated, "that on or about the said 5th day of June, 1929, this defendant paid the railroad fare for his said child, Thomas Orville Wear, Jr., to visit him and said child's grandparents, at Independence [perhaps Lawrence was meant], Kan. . . ." The prayer was that plaintiff take nothing by reason of her petition

and that defendant have such relief as in law and equity he was found entitled to receive. The action was tried on its merits September 14, 1929, both parties appearing in person and by their respective counsel. The court heard the evidence, found defendant had been guilty of gross neglect of duty, and that plaintiff was without fault, and granted to her a divorce. The court also found plaintiff to be a fit and proper person to have the custody of the child, Thomas O. Wear, Jr., and awarded such custody to her. The court further found that "about June 5, 1929, the plaintiff sent Thomas O. Wear, Jr., to Lawrence, Kan., for a visit with his grandparents, the father and mother of the defendant, with the agreement that said minor child would be returned to Oklahoma City in time for the school term commencing in September, 1929," and "that at the time of the institution of this suit said minor child was a resident of Oklahoma county, Oklahoma, and that this court has jurisdiction of the person of said minor child." And the court "ordered that the defendant, Thomas O. Wear, shall return said minor child, Thomas O. Wear, Jr., to the jurisdiction of this court within ten days from this date and deliver said child over to the plaintiff, Juanita C. Wear."

The child was not actually present in Oklahoma at the time the divorce suit was brought there, nor at the time the judgment and decree was rendered in that case; in fact, he was not in Oklahoma at any time after about June 5, 1929. Thomas O. Wear did not comply with the order of the Oklahoma court that he return the child to the jurisdiction of that court and deliver him to the plaintiff in that action, but he did return to the home of his brother-in-law near Lawrence, Kan.

On September 21, 1929, Juanita C. Wear filed in the district court of Douglas county her petition for a writ of habeas corpus, in which she alleged that she resides at Oklahoma City; that she is the mother, and Thomas O. Wear the father, of the child in question; that she had the care and custody of the child in the state of Oklahoma; that on June 5, 1929, she permitted the child to go to Lawrence, Kan., for the purpose of visiting its father and grandmother and other relatives in Douglas county, Kansas, but with the specific understanding that the child was to be returned to Oklahoma City about September 1, 1929, so that he might enter school, and "that the child is not now and never was a resident of or domiciled in the state of Kansas, but was in the state of Kansas

temporarily and for the purpose of a visit as hereinbefore alleged." She also pleaded the divorce action and set out a copy of the decree of the Oklahoma court in that case as an adjudication of her right to the custody of the child. She named as respondents Ralph L. Coleman and Thomas O. Wear. Coleman filed a response in which he denied he was restraining the child of his liberty, and alleged that both Thomas O. Wear and Thomas O. Wear, Jr., were living at his home, and further than that he had nothing to do with the child and had no possession or control over him, for which reason it would not be possible for him to bring the child into court. Thomas O. Wear, as respondent, filed a return in which he alleged that he is the father of Thomas O. Wear, Jr.; that since April, 1929, he has been a resident of and domiciled in Douglas county, Kansas; that he has in his possession and under his care the child in question and is furnishing him a good home and has him in school; that the petitioner is an unfit person to have the custody of the child; denied that the child was a resident of or domiciled in Oklahoma, and alleged that the child is a resident of and domiciled with him in Kansas; that if the Oklahoma court made the order and judgment and decree as alleged in plaintiff's petition that the same are void for the reason that the court had no jurisdiction over the person of the child, nor to decree that the plaintiff in that case is a fit person to have the custody of such child, and that the findings, decree and judgment of the court touching such matters are void for the lack of jurisdiction; denied that he entered into an agreement to keep the child in Kansas temporarily and return him to Oklahoma; alleged that it was for the best interests of the child that he remain with respondent, and admitted that plaintiff had sued him for divorce in Oklahoma. The prayer was that the writ be denied, that the court award the custody of the child to respondent, or some other person resident of the county whom the court might select as a proper person to care for and rear the child, and for such further orders as would be for the best interests of the child.

The proceeding appears to have been heard by the court on plaintiff's petition of the writ and the returns of the respondents. The petitioner, to support the issues on her part, introduced in evidence the record of the action for divorce in Oklahoma, including the pleading and all findings, orders and judgments, and rested. The pertinent portions of these have been stated and need not be repeated.

The respondent, Thomas O. Wear, testified, in substance:

"I am the respondent in this case. The petitioner was my wife prior to the time of the divorce. The child in question is the only child of the petitioner and this respondent. I came to Douglas county from Oklahoma April 11, 1929, and went to the home of Ralph Coleman, who is my sister's husband. My father and mother live in the same home. I came with the intention of making this county my permanent home, brought all my personal belongings, left nothing in Oklahoma, and have resided here ever since."

He was asked the state of his health at the time he came to Kansas, but an objection to that question was sustained. He further testified:

"I met the boy at the train June 5. He came alone and has been with me ever since."

The respondent, Ralph L. Coleman, testified:

"Reside in this county—born and reared here. Mr. Wear lives in my home, as also the little boy and the father and mother of Mr. Wear. Mr. Wear came to my home April 11, 1929, and brought all his personal effects. The boy came June 5—came alone. Mr. Wear met him at the train. Mr. Wear and the boy have been in my home ever since they came up. I know how it happened that the boy came."

It does not appear from the abstract that he was asked to testify as to how it happened that the boy came. This is all the evidence shown by the abstract to have been offered by respondents.

In allowing the writ the court did not make findings of fact, not being requested to do so, nor prepare a formal opinion, but did make a statement embodying the facts as the court treated them and giving reasons, with the citation of some authorities, for its ruling. This statement of the court appears to have been taken by the stenographer, and it is relied upon to some extent by both parties in this court. For that reason we set it out practically in full.

"This is an application for a writ of habeas corpus, . . . It is docketed here as Wear against Wear, and from what I say later on, I am inclined to think that is a pretty proper method of docketing this kind of a case.

"Juanita C. Wear is a resident of Oklahoma. She filed an action for divorce there I think in July of this year. She probably got service by publication upon her husband. In any event her husband appeared in the district court of Oklahoma county, Oklahoma, and contested her right to relief. He appeared both in person and by attorney. Along in April sometime, of this year, her husband, I think, left Oklahoma. He came up to Douglas county and took up his residence here. A child of these parties was in Douglas county at the time that the matter between his mother and father was ad-

judicated in Oklahoma. Among other things that the plaintiff asked for in that divorce suit was the custody of the child. The child was not in Oklahoma at the time of adjudication by the court, but was in Douglas county, Kansas.

"The question arises largely as to what force and effect should be given the decree of the Oklahoma courts so far as the custody of this child is concerned.

"It is contended on the part of Mrs. Wear that the matter is *res adjudicata.* It is contended on the part of the father, Thomas O. Wear, that the court in Oklahoma had no jurisdiction to determine who should have the custody of this child for the reason that the child was a resident and domiciled in Douglas county, Kansas, and for that reason the court was without jurisdiction.

"Full force and effect is given to divorce decrees which are granted in the various states in other states. There is abundant authority to the effect that where a child is out of the state in which the decree is granted and there is publication service upon the defendant who has the apparent custody of the child at the time at least of the adjudication in regard to the possession of the child, such decree is not binding upon the defendant in the state in which the child was.

"It would seem to me where matters are submitted to a court of competent jurisdiction for determination and certain matters are litigated, that is conclusive as to the matter over which the court had jurisdiction.

"Now, the Oklahoma court had jurisdiction in this divorce case to determine whether or not Juanita C. Wear was entitled to a divorce from Thomas Wear. It had jurisdiction to award property between them and had jurisdiction to make interlocutory orders in regard to matters connected with the divorce suit, and it had jurisdiction to determine the custody of the child, and it had the same general jurisdiction that a district court of this state would have, which is a general jurisdiction both in law and equity.

"If there had been no appearance by Thomas Wear in Oklahoma, then there could be no adjudication which would bind him so far as the custody of this child was concerned in Oklahoma.

"I know, we all know how this character of litigation [habeas corpus] originated. Its purpose was to inquire into the reason in a legal manner as to the restraint of some person of his liberty. The sheriff has possession of an individual. He says he is unlawfully restrained of his liberty and he makes the application for the writ and asks to have the right of the sheriff to hold him inquired into.

"The writ has been amplified, use of it has and the purpose of it, so as to make it proper both under the statute and under the rules of the courts to make the writ a proper vehicle by which to inquire into the question of which of two persons shall have the right of custody of an individual. The Hamilton case in 66 Kansas [754] is quite enlightening, I think. The syllabus reads, you are all familiar with it but I am going to read it anyway. 'In a proceeding in habeas corpus where a controversy arises over the custody of a child, the real issue is one between private parties contesting a question of private right, in which there arises no question of personal liberty.' In that case is quoted with approval the case of *State v. Bechdel* [37 Minn. 360] . . . The

syllabus in that case says: 'Former adjudication on question of right to custody of infant child, brought up on habeas corpus, may be pleaded as *res adjudicata,* and is conclusive upon the same parties, upon the same state of facts. Such a case is really one of private parties contesting private rights under the form of proceedings on habeas corpus, and is distinguishable from one in which the writ is sued out on behalf of a person unlawfully restrained of his liberty.'

"The principal claim of the respondent in this case is that the Oklahoma court had no jurisdiction by reason of the fact that the child was a resident and domiciled in Kansas. The child isn't a chattel. The child doesn't take on the character of real estate, as suggested in both the cases just cited and others, as far as that is concerned.

"The contest, if we are allowed to call it that, and I think we are, is one between two parties for a determination of that question by a court of competent jurisdiction. I think a solution of the situation is quoted in the 20 A. L. R. [815], which cites a Tennessee case [*Kenner v. Kenner,* 139 Tenn. 211, 700], which is reported in the L. R. A. 1918E, [587] . . . In that case a woman was a resident of Tennessee. She took a child begot by her and her husband down in Alabama and stayed down there. Eventually she got a divorce from her husband. The service was by publication. Later she came back to Tennessee and brought the child with her. Her husband instituted habeas corpus proceedings in Tennessee to obtain the custody of the child, and it was denied him on the ground that he was precluded by an Alabama decree which had awarded the custody of the child to the mother. The court held that the Alabama court had jurisdiction to award custody of the child who was present with the mother in that state, even upon the assumption that the Tennessee domicile of the father remained that of the child. I haven't read that opinion. This is an excerpt from it.

"Now, in this case, the Oklahoma court had jurisdiction of everything before it. By that I mean it had jurisdiction to determine any question which arose in regard to the custody of the child. One of the things which could have been raised in the Oklahoma court was the question of whether or not a child who was at the time in Kansas could be made the subject of a court so far as its custody was concerned in Oklahoma. If that question were controverted it was proper for litigation in that court—for determination in that court.

* * * * * * * * * * * * *

"I don't believe that the presence of the child in Oklahoma was necessary to a determination of the question of its custody in that divorce case. It is undoubtedly true, it is the law of this state and other states too, that the question of what is best for the child and who shall have the custody of it is a matter which is open at all times. That has its limitations, however, and that is when the matter is once inquired into by a court of competent jurisdiction, there will be no further inquiry unless there is a change of situation.

"You can readily see if people had four or five children, and had them in four or five jurisdictions, that what I say in regard to the power of each court to determine the custody of the child in that particular jurisdiction would lead to endless litigation.

"But the courts of the various states have power at any time to inquire as to who shall have the custody of the child.

"Now, I have recapitulated a little bit. I am satisfied that the court in Oklahoma had power to award the custody of this minor child; that it was awarded to Juanita Wear; that in the absence of any changed condition that there may be she would be entitled to the possession of that child by reason of that decree.

"The writ says she is an unsatisfactory person to have the child; that the court was without jurisdiction to inquire into the matter. I don't know if there is any allegation that there is any changed condition since this decree was granted, but I think whether the answer or writ states that or not it is a proper matter to inquire into.

"I will leave the matter in this way for a moment at least, that if there is no claim of any changed condition since this decree was entered, then the writ should be allowed. Now if there is some claim of a changed condition, it is a matter that the court will inquire into at this time.

. . . . . . . . . . . . . .

"I think the child came up here along in the spring, sometime at least before July 19, when the [divorce] action was filed."

The journal entry recites that "the court . . . finds that the decree and order" of the Oklahoma court in the divorce action "is final and conclusive at this time and the controversy in this action is *res judicata*. Whereupon counsel for respondents, in open court, states that no change in circumstances has occurred since the date of the above-mentioned decree. Thereupon the court finds that said writ as prayed for should be allowed." The court entered judgment allowing the writ and adjudged that the respondent Ralph L. Coleman have judgment for his costs and "go hence without day."

The respondent Thomas O. Wear has appealed. His contention, broadly stated, is that the Oklahoma court had no jurisdiction to award the custody of the child to the plaintiff in that action, the child being in fact in Kansas, and, as appellant contends, domiciled in Kansas, and that the trial court in this case, with no evidence but the record of the Oklahoma court, had nothing upon which to base its order granting the writ.

The decision of the court below in the present case, as shown by the statement of the court at the time judgment was rendered, is predicated primarily upon the theory that a habeas corpus proceeding between parents for the custody of their children is in effect an action between those parties to determine their respective rights to such custody, citing *In re Hamilton,* 66 Kan. 754, 71 Pac. 817; *Kenner v. Kenner,* 139 Tenn. 211, 700, and allied cases collected in the notes 20 A. L. R. 815. One of the leading cases dealing with

that phase of the question is *People, ex rel. Allen, v. Allen,* 40 Hun (N. Y.) 611. In that case the husband and wife and children had lived in Illinois, where the wife brought suit for divorce. The husband was personally served with summons, appeared by an attorney, and answered. Later the husband was adjudged to be in contempt for failure to comply with an order requiring him to pay alimony and for taking and removing the children out of the state in violation of the terms of the previous order of the court. On the trial of the case plaintiff's evidence was received, but evidence on behalf of defendant was excluded on the ground that he was in contempt. Judgment was rendered granting plaintiff a divorce, finding she was a proper person to have the custody of the children, and that defendant was unfit to have such custody, and giving the custody of the children to the plaintiff. The husband having removed the children to the state of New York, the wife went to that state and brought proceedings in habeas corpus for the custody of the children. It was held: That as between the husband and wife the question as to the fitness and competency of the mother to have the care and control of the children was conclusively established by the judgment of the court of Illinois and could not be again examined in the courts of this state. That the question was binding upon the children only for the time being, and that as soon as the circumstances of the custodian changed, or other circumstances arose which would make it for the best interests of the children that there should be a change, it would be the duty of the court in which the decree was originally made, or any other court having jurisdiction, to make such change. That upon the facts shown to exist in this case the report of the referee in awarding the custody and control of the children to the mother should be affirmed. In the opinion it was said:

"In the case under consideration, the question is narrowed to a contest between the father and the mother for the possession of the children. They are of that age that they cannot choose for themselves. The father was a party to the divorce action, duly served with summons, and had an opportunity to defend. Instead he had violated the decree of the court, was adjudged guilty of a contempt, and thereby forfeited his right to defend the action. The decree, nevertheless, is binding upon him, and had the same force and effect as if he had defended. It was adjudged upon the issues raised by the pleadings in the action that he is an unfit and improper person to have the custody and control of the children. That judgment is binding upon him, and full faith and credit must be given to it. He surreptitiously, and without the consent of the mother, removed the children from that state into this

state. If the judgment of the Illinois court is not binding upon him, the judgment of this court would not be in any other state of the Union. If, therefore, he should again surreptitiously remove the children to another state, she might again be compelled to litigate the same question in any state to which he saw fit to remove them. Such a rule would be unreasonable and unjust, and we think ought not to prevail." (p. 621.)

We note the court disapproved *In re Bort*, 25 Kan. 308, which we shall mention later. Other cases applying the same principle, each on its own facts, are, *Power v. Power*, 65 N. J. E. 93 (reversed on other grounds, 66 N. J. E. 320) ; *State v. Rhoades*, 29 Wash. 61; *Stetson v. Stetson*, 80 Me. 483; *Hamilton v. Anderson*, 176 Ark. 76.

But the cases and the text writers citing *People, ex rel. Allen, v. Allen*, supra, as a leading authority on the point above mentioned, appear to have overlooked the disposition of the appeal in that case by the New York court of appeals (*People, ex rel. Allen, v. Allen*, 105 N. Y. 628), which places the decision on an entirely different basis than that for which it is commonly used as an authority. The appeal was disposed of as follows:

"We dismiss this appeal for the reason that the courts below, upon a view of all the existing facts relating to the welfare and interest of the infants, exercised their discretion in awarding to the mother the custody of the children; and, in so doing, gave to the Illinois decree not the force of an estoppel, or the conclusive effect sometimes due to a judgment, but simply regarded it as a fact or circumstance bearing upon the discretion to be exercised without dictating or controlling it."

This view was followed in *People, ex. rel. Pruyne, v. Walts*, 122 N. Y. 238, where a testamentary guardian, by habeas corpus, sought the custody of a seven-year-old girl who, for reasons affecting her health and welfare, had been placed in the custody of persons by the child's mother. Respecting the use of the writ in such cases it was said in the opinion:

"The common-law writ of habeas corpus was a writ in behalf of liberty, and its purpose was to deliver a prisoner from unjust imprisonment and illegal and improper restraint. It was not a proceeding calculated to try the rights of parents and guardians to the custody of infant children. It was of frequent use, however, when children were detained from their parents or guardians on the ground that absence from legal custody was equivalent to illegal restraint and imprisonment. In the case of children of the age of discretion the object of the writ was usually accomplished by allowing the party restrained the exercise of his volition, but in the case of an infant of an age to be incapable of determining what was best for itself the court or officer made the determination for it, and, in so doing, the child's welfare was the chief end in view. (*Rex v. Delaval*, 3 Burr. 1435; *In re Waldron*, 13 Johns.

418; *People, ex rel. Barry, v. Mercein*, 8 Paige 47, 25 Wend. 73; *People, ex rel. Wilcox, v. Wilcox*, 22 Barb. 178; *Wilcox v. Wilcox*, 14 N. Y. 575; *People, ex rel. Whele, v. Weissenbach*, 60 N. Y. 385; Hurd on Habeas Corpus, chap. 9.) The purpose of the writ as now regulated by the code is the same. (Code Civ. Pro. §§ 2015, 2031.) The court is bound to respect the legal rights of the parent or guardian, and their rights cannot be overthrown by the mere wishes of the child. But the jurisdiction to be exercised by the court or officer is equitable in its character, and the welfare of the child is the chief object to be attained, and must be the guide for the judgment of the court." (p. 241.)

The holding of the New York court of appeals is in harmony with a long line of decisions in Massachusetts, beginning with *Woodworth v. Spring*, 4 Allen 321 (1862), including *Glass v. Glass*, 260 Mass. 562 (1927), and accords with *In re Alderman*, 157 N. C. 507, which cites *In re Bort*, 25 Kan. 308, as "a leading authority," and also accords with *Commonwealth v. Daven*, 148 Atl. 524 (Pa.), decided January 6, 1930. In that case the husband and wife were residents of North Carolina. They had separated and he, being tubercular, was living in a sanitarium. Their two children, boys four and six years of age, were living with their mother. In the spring of 1927, at the instance of the father, the children were brought before the juvenile court on a charge that they were neglected and that the mother, by reason of immoral conduct, was unfit to have their custody. After several hearings, at which the mother appeared personally and by counsel, the judge of the juvenile court made a written order placing the children in a home where children are kept and cared for, "there to remain until the further orders of this court," giving the parents the privilege of seeing the children on specified occasions. The order then recited that the court stated to the mother its reluctance to make any decision separating a mother from her children, and hoped that the status of the mother would be so changed in the future as to enable a different disposition of the case. Disregarding the order of the juvenile court, the mother took the children and went to Philadelphia, where she had relatives, and with whom she and the children made their home. Some months later a representative of the juvenile court went to Philadelphia and brought habeas corpus in the municipal court for their custody, relying upon the decree of the North Carolina court, and obtained an order for their custody, which was appealed from. The court said:

"We think, however, the municipal court fell into error in refusing to hear evidence as to present conditions or pass upon the merits of the case when

heard before it. Orders fixing the custody of children are temporary in their nature and always subject to modification to meet changed conditions. In the instant case it was expressly so made. . . . The controlling question is the welfare of the child at the time of the rehearing before the court and not at some former time. Here the real question before the municipal court was the proper custody of the children living in Philadelphia in 1928; on that question all relevant evidence was admissible." (pp. 525, 526.)

After referring to the decision of the court in *In re Alderman*, supra, where the court refused to recognize a decree made in Florida for the custody of a child, and other authorities, it was further stated:

"In our opinion, the true view of the question is that, where the custody of a child has been passed upon by the proper court in one jurisdiction, who has heard the case and made an adjudication incorporating therein certain findings of fact, the facts so found should, as to the parties participating therein, be treated as established and not open to question in another jurisdiction. . . . Upon those facts and any others that may be presented, the court, where the matter is again brought up, must determine the ultimate question of the best interests of the child. Whether the same conclusion should be reached, even on the same facts, depends on the judgment of the court rehearing the case." (p. 527.)

The judgment of the court below was reversed with directions to rehear the case upon its merits and make such disposition thereof as would promote the future welfare of the children in question.

Appellant stresses the question of the domicile of the child and argues that since he, the father of the child, was a resident of and domiciled in Kansas, and the child was with him in Kansas, that the Oklahoma court had no jurisdiction to make any valid order for the custody of the child. The American Law Institute, a body of jurists and legal scholars, in the restatement of the law of conflict of laws, gives the rule as follows (§ 124):

"A state can exercise through its courts jurisdiction to determine the custody of children or create the status of guardian of the person only if the domicile of the person placed under custody or guardianship is within the state."

This statement may be illustrated by the following cases: In *Lanning v. Gregory*, 100 Tex. 310, a husband and wife resided in Texas. They had been married about six years and had a child, a boy, about four years old. Difficulties arose between them and they agreed to live separate and apart. The husband took the boy and went to the home of his sister in Louisiana. He had a parol agreement with his wife that she could see the boy when she wanted to, and when she wanted him he would bring the boy back to her.

Thereafter the wife brought a suit in Texas for divorce. The service on her husband was by publication. He made no appearance in the case. She obtained a decree of divorce by default. In her petition she had asked for the custody of the child, but withdrew that request at the trial, and no order was made by the court as to the custody of the child. Later the wife married a second husband and moved to Kentucky. Some seven years later she and her second husband were visiting in Dallas, Tex., and learned that her son, with some of his Louisiana relatives, was visiting at Dallas. At the mother's request the child was left with her overnight, to be returned the next morning. Instead of returning the child she and her husband started to take him away and were overtaken at Sulphur Springs, Tex., where the child was taken from the mother by the child's father, who had been notified. The mother then brought habeas corpus. The trial court gave the mother the custody of the child for twelve years. On appeal to the circuit court of appeals the court propounded three law questions to the supreme court. The first was whether the domicile of the child followed that of his father and was such domicile thereby changed from Texas to Louisiana. The supreme court answered that question in the affirmative and said that even the agreement between the father and the child did not have the effect of emancipating the child, and that its domicile was in law with the father. The second question was whether the order of the trial court awarding the custody of the child to the mother until he become twelve years of age changed the status of the child. The court answered that in the affirmative. The third question was, if the child's domicile at the time of the bringing of the habeas corpus proceeding was in Louisiana, did the district court in Texas have jurisdiction to hear and determine between the father and mother which should have the custody of the child? As to that the court answered in the negative and held that the child, being in the lawful custody of the father, its domicile was in Louisiana, and that the district court of Texas, in the habeas corpus proceeding, did not acquire jurisdiction of the child by reason of its temporary presence in the state of Texas, and that the court had no authority to adjudge a change of relation between the father and the child.

In *Kline v. Kline*, 57 Ia. 386, it was held:

"A decree of divorce rendered in the state of Wisconsin, on service by publication, so far as it attempted to fix the custody of the minor children who were then residents of the state of Iowa, is without jurisdiction and void."

There the father and mother lived in Wisconsin. They separated and the wife moved to Iowa, taking with her the two children. Thereafter the husband procured a divorce in Wisconsin on service by publication. There was no notice to the wife. The decree in the divorce case awarded the custody of the children to the father. Some five years later the husband, still a resident of Wisconsin, brought habeas corpus proceedings in Iowa against the mother, who had remarried, for the custody of the children. There was a showing that the children were well provided for and had a good home with the mother. The husband argued that the domicile of the father was the domicile of the children, and therefore that the Wisconsin court had jurisdiction notwithstanding the fact that the children were with the mother in Iowa and that full faith and credit must be given to the divorce decree. But it was held that though this was the general rule it is subject to exceptions in proceedings for divorce where the law recognized the husband and wife as having separate domiciles, and that a valid divorce decree may be rendered in the state where only one of the parties resides. Suit for divorce in its nature makes the husband and wife opposing parties, and the legal fiction of the unity of person and of domicile by reason of the marriage is destroyed by the law which authorizes divorce; therefore the Wisconsin court had jurisdiction to declare the status of the parties and grant the divorce, but that the decree in excess of that was void for want of jurisdiction; and where the minors are nonresidents of the state where the divorce proceedings are had the court acquires no jurisdiction of their custody simply because the decree can have no extraterritorial force or effect, citing *Woodworth v. Spring*, 4 Allen, 321 (Mass.), in which it was held:

"Every sovereignty exercises the right of determining the status or condition of persons found within its jurisdiction. The laws of a foreign state cannot be permitted to intervene to affect the personal rights or privileges even of their own citizens, while they are residing on the territory and within the jurisdiction of an independent government. . . . The question whether a person within the jurisdiction of a state can be removed therefrom depends not on the laws of the place whence he came or in which he may have his legal domicile but on his rights and obligations as they are fixed and determined by the laws of the state or country in which he is found." (p. 323.)

The opinion further proceeds:

"The authorities which we have cited even go farther than this and in effect hold that if there was jurisdiction to award the custody and control of

the children of the marriage to one of the parties, by reason of the children being at the time within the jurisdiction of the court, yet that such decree is without force in a foreign jurisdiction to which the children may be afterwards removed."

In *Duryea v. Duryea*, 46 Ida. 512, the husband and wife were living in Nevada. The husband took the children and went to Idaho. About four years later the wife learned where the children were, went to Idaho and attempted forcibly to remove them. The husband resisted these efforts and while the wife was there brought suit against her for divorce. Pending the action the court placed the custody of the children in a third party. Soon thereafter the wife, having returned to Nevada, caused a warrant to be issued for her husband's arrest on the charge of wife desertion, and, over his opposition, he was extradited to Nevada. The criminal charge was later dismissed, but while the husband was confined in jail in Nevada he was served with process in an action for divorce and the custody of the children brought by the wife in that state. The husband resisted that action, setting forth that the children were not within the jurisdiction of the Nevada court and actually were in the custody of a court of Idaho. The Nevada court granted the wife a divorce and awarded her the custody of the children. The husband refused to surrender them. The wife then went to Idaho and brought habeas corpus for their custody, relying on the Nevada decree. At the hearing of that proceeding the court received evidence bearing on the fitness of the respective parties to have the custody of the children, and permitted that evidence to extend over a wide range. At the conclusion of the hearing the husband was given the custody of the children, the order specifying as a condition that they be kept at the home of a third party and not removed from the jurisdiction of the court. The opinion noticed the fact that—

"Questions relating to the respect to be accorded, extraterritorially, to decrees awarding custody of children have arisen chiefly in two classes of cases. In most instances the parents, or at least one of them, *and the children,* were before the court making the decree. In this class of cases some few courts have refused to be bound by a foreign decree, holding that as soon as the child comes within its jurisdiction the question of its status becomes one for the local court to determine in the best interests of the child. (*In re Alderman,* 157 N. C. 507, 73 S. E. 126, 39 L. R. A., n. s., 988.)

"The rule that may be denominated the majority rule, however, in this class of cases, recognizes the conclusiveness of the foreign decree and holds that it may be enforced extraterritorially, providing no change has taken

place in the circumstances which would warrant a reopening of the matter. This rule affords exactly the same recognition to a decree of a foreign court that would be accorded to an adjudication within the forum, for it is well established that a decree awarding custody may be modified or changed by the court making it as the circumstances may warrant.

"The second class of cases involves facts similar to those in the case at bar, wherein an attempt has been made to decree the custody of children not within the jurisdiction of the court. In this class of cases it is almost uniformly held that such a decree need be accorded no extraterritorial recognition.

"This holding is supported by principle as well as by authority. In all cases involving divorce and the custody of children, the court has before it for consideration a status, or more properly a double status. Minor, in his Conflict of Laws (1901), p. 208, says of a proceeding of this kind:

"'Being nothing less than a determination of the guardianship of the children, it is a question of *double* status, relating no less to the status of the children than to that of the respective parents. The decree for the children's custody therefore is as much a decree *in rem* as is the divorce itself, but with a more extended *res*.'

"To the same effect is 2 Bishop on Marriage and Divorce, sec. 1189 [p. 189].

"It is elementary that each state may determine the status of its own citizens. (*Milner v. Gatlin,* supra.) The law that governs the status of any individual is the law of his legal situs, that is, the law of his domicile. (Minor, *supra,* p. 131.) At least this jurisdictional fact—dominion over the legal situs— must be present before a court can presume to adjudicate a status, and in cases involving the custody of children it is usually essential that their actual situs as well be within the jurisdiction of the court before its decree will be accorded extraterritorial recognition. . . .

"But it may be urged that a decree in a foreign state, though not binding on nonresident children, is binding on the parents if they appear and subject themselves to its jurisdiction. Such a contention ignores the nature of status and particularly of status as applied to infant children. 'The status of an individual, used in a legal sense, is the legal relation in which that individual stands to the rest of the community.'" (pp. 516, 521.)

The court further considered the question of domicile and held that was in Idaho with the father.

Other authorities on this point are: *Weber v. Redding,* 163 N. E. 269 (Ind.); *Harris v. Harris,* 115 N. C. 587; *Rigney v. Rigney,* 127 N. Y. 408; *People v. Hickey,* 86 Ill. App. 20; *Vetterlein, Petitioner,* 14 R. I. 378; *Griffin v. Griffin,* 95 Ore. 78; 2 Cooley's Const. Lim. 8th ed., p. 856; Wharton on Conflict of Laws, 3d ed., § 239f.

Appellant stresses the domicile of the child being with him in Kansas more than the record of the case warrants. It is true, of course, that a child of tender years lacks capacity to establish a domicile of choice. When the members of the family are living together the husband and father determines and establishes the domicile of choice, not only for himself, but for his wife and children,

neither of whom has a domicile apart from his; but when the wife, without fault on her part, is compelled to live separate and apart from her husband, she then has capacity to determine and establish a domicile of her own (American Law Institute, Conflict of Laws, § 30). For example, if a husband and wife are domiciled at a place X, and the husband deserts his wife and goes to a place Y, where he establishes his domicile, and the wife continues to reside at X, that place remains her domicile. When the parents are living separate and apart from each other each has capacity to have a separate domicile. The domicile of a minor child of the parties is that of the one of them with whom it lives, or who, by a competent court, has been given its custody. In this case the appellant, his wife and child resided in Oklahoma City, which was their domicile. He took his personal belongings and left, not with the thought of changing the place of residence or domicile of his family, but with the obvious intent and purpose of separating from his wife. He left the wife and child at their domicile in Oklahoma, with such home as he had furnished them, the household goods and their personal belongings. He took nothing with him but his own personal belongings. The result was that the domicile of his wife and child continued to be in Oklahoma City. Now if the child came, or was sent by its mother, to Kansas on a visit, that fact did not change the domicile of the child. A child does not lose his or her domicile by being sent on a visit by its parents, or the one of its parents in whose custody it rightfully is.

A matter, although not referred to in the briefs, should be considered as having bearing upon the force which should be given by the courts of this state to a decree of divorce rendered in another state. In 1906 the supreme court of the United States decided the case of *Haddock v. Haddock*, 201 U. S. 562, in which it was held, among other things, and under the facts stated, that the courts of one state were not, by virtue of the full faith and credit clause of the federal constitution, required to give full force and effect to a decree of divorce rendered in another state on constructive service only. At its first session after this decision our legislature enacted a statute (R. S. 60-1518) which reads as follows:

"Any judgment or decree of divorce rendered upon service by publication in any state of the United States in conformity with the law thereof shall be given full faith and credit in this state, and shall have the same force with regard to persons now or heretofore resident or hereafter to become a resident of the state as if said judgment had been rendered by a court of this state,

and shall, as to the status of all persons, be treated and considered and given force the same as a judgment of the courts of this state of the date which said judgment bears."

The first case in this court involving this statute is *McCormick v. McCormick*, 82 Kan. 31, 107 Pac. 546. There a husband had, by publication service, obtained a divorce in Missouri from his wife, who was in Kansas. Later she brought an action in this state for alimony and to subject real property, the title of which was in the name of her husband, situated in Kansas, to its payment. The court referred to the federal decision and the statute above mentioned and in an exhaustive opinion reviewed the earlier cases in this court and held, among other things, that the Missouri court had jurisdiction to hear the case before it; that its decree was not open to collateral impeachment on the ground of fraud; that the legislature, by the act just mentioned, placed such decrees on the same basis as judgments of the courts of this state with respect to all persons, and the status of all persons affected, and that the facts embraced in the issues presented by the petition on which the decree rests are *res adjudicata;* that the action in Missouri was open for the consideration of the subject of alimony, but no application for alimony was made in that case, and the judgment therein was a bar to recovery of alimony in the suit later instituted in Kansas. The court specifically followed and approved *Roe v. Roe,* 52 Kan. 724, 35 Pac. 808, and distinguished the case of *Rogers v. Rogers,* 56 Kan. 483, 43 Pac. 779. The statute was again considered in *Miller v. Miller,* 89 Kan. 151, 130 Pac. 681. This was a suit for partition of land in Kansas and involved a decree of divorce rendered in Utah on publication service. The court held that by statute of this state any judgment or decree of divorce rendered upon publication service in any state of the United States in conformity to the laws thereof has the same force, and must be given the same force and credit as if rendered by a court of this state, and further held:

"It is a law of this state that whenever the jurisdiction of a court depends upon a fact properly litigated and determined in the action itself, the judgment rendered finding the fact is conclusive evidence of its existence and of the jurisdiction of the court until the judgment is vacated, reversed or annulled in a direct proceeding instituted for that purpose." (Syl. ¶ 2.)

It was further held that under the laws of Utah it was necessary for plaintiff in an action for divorce to plead and prove residence there for one year, and that the judgment of the court of that state finding

such residence cannot be collaterally impeached in this state on the ground that the plaintiff was in fact a resident of Kansas and not of Utah. These cases were followed in Kansas by *Carter v. Carter,* 89 Kan. 367, 131 Pac. 561; *Littlefield v. Paynter,* 111 Kan. 201, 206 Pac. 1114, and *Noonan v. Noonan,* 127 Kan. 287, 273 Pac. 409. It is true that this statute and these decisions pertain specifically to a decree of divorce rendered in another state on publication service only as against a citizen of this state. But no one would contend that a judgment and decree in an action for divorce in another state where the parties appear, file pleadings and try out all issues, should be given less faith and credit than should be given to the judgment and decree of the court of another state where the only service is by publication. The result is that in this state, and under our statutes as they now exist, a judgment and decree in an action for divorce rendered by the court of another state shall be given the same force as if rendered by a court of this state, "and shall, as to the status of all persons, be treated and considered and given force the same as a judgment of the courts of this state of the date which said judgment bears."

However, the jurisdiction of the trial court in this proceeding to determine what disposition should be made of the child between the petitioner, on the one hand, and the respondent, on the other, did not depend on the domicile of the child, nor on the domicile of either of its parents. (*Finlay v. Finlay,* 240 N. Y. 429.) The disposition of a child in a case such as this should depend on the law of the place where the child is found rather than the law of the place from whence it came. In a habeas corpus proceeding between parents for the custody of the child the rights of the parents are to be considered, but the interest of the state, in its position as *parens patriœ* to all minors within its jurisdiction, is ever present. As between the parents themselves, they may be bound by a former adjudication (see *Avery v. Avery,* 33 Kan. 1, 6, 5 Pac. 418; *In re Hamilton,* 66 Kan. 754, 71 Pac. 817), but the state, in its relation of *parens patriœ,* looks to the welfare of the child at the time the inquiry is being made, and for that purpose former adjudications between parents is evidenciary only and not controlling. This is illustrated by the case *In re Bort,* 25 Kan. 308, a habeas corpus proceeding brought by the father for the custody of the children. The husband and wife and children formerly resided in Wisconsin. There the wife brought a suit for divorce against her husband. He

answered and filed a cross petition for divorce. While the action was pending the wife, bringing the children with her, came to the home of her parents in Kansas, and later dismissed her petition for divorce in Wisconsin. The divorce action proceeded to trial on the husband's cross petition. He was granted a divorce, and a decree was entered giving him the custody of the children. He then came to Kansas and brought the habeas corpus suit for their possession, relying upon the decree, and invoked the clause of the federal constitution which provides that full faith and credit shall be given in each state to the judicial proceedings of other states, and contended that the decree of the Wisconsin court concluded the rights of the respective parents at its date, and unless some subsequent change in the relative position and fitness of the parties was shown the custody must be given to the father. In the opinion the court said:

"We shall concede that, as between the parents, that decision is a finality, . . . . The decision only determines the rights of the parties *inter sese.*"

But it was held that the question of the best interests of the children was controlling and under the evidence in the case that it was to the best interests of the children that they remain with the mother. The writ was denied.

In this case, while it was alleged in the return of Thomas O. Wear that the petitioner was not a proper person to have the custody of the child, and that it was for the best interests of the child that it remain with the respondents, or be placed in the custody of others who could better care for it, no evidence was offered in support of these allegations. We have heretofore set out all the evidence shown by the abstract, with slight abbreviations which did not change its meaning. The trial court correctly held that the contest as presented to the court was one between the father and the mother, and that as between them the matters adjudicated by the Oklahoma court in the divorce case were *res judicata* as to matters determined by the decree in that case, and as of the time it was rendered. The trial court specifically offered to hear evidence as to changed conditions which would authorize or justify a different order with respect to the custody of the child, but, as shown by the entry in the journal, counsel for respondents stated in open court they had no evidence of that character to offer.

From this it follows that the court made the only disposition of the child justified under the record, and the judgment of the court below is affirmed.